**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANYA DAVIS and SHANNON WEBB | ) | |
| | ) | Case No.:_____ |
| Plaintiffs, | ) | |
| | ) | Judge:_____ |
| v. | ) | |
| | ) | |
| PACKER ENGINEERING, INC., and | ) | JURY TRIAL DEMANDED |
| THE PACKER GROUP, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

NOW COME, Plaintiffs, DANYA DAVIS ("Plaintiff" and/or "Davis") and SHANNON WEBB ("Plaintiff" and/or "Webb") by and through their undersigned counsel of record, and upon personal knowledge as to those allegations in which each Plaintiff possesses such personal knowledge and upon information and belief as to all other matters, complain against Defendants PACKER ENGINEERING, INC. and THE PACKER GROUP, INC. (hereinafter referred to collectively as "Defendants", "Defendants Packer" and/or "Packer"), as follows:

## NATURE OF THE CASE

1.     While working for Defendants Packer, Plaintiffs were repeatedly and in an ongoing fashion subjected to an environment and culture of gender and sexual harassment and discrimination towards females. On almost a daily basis, Plaintiffs were forced to deal with offensive, demeaning and degrading conduct and statements towards females.

2.     Despite repeated complaints, Plaintiffs concerns and objections to the discrimination and harassment were ignored.  In fact, in response to their complaints, Plaintiffs

were retaliated against, ridiculed for trying to fight the culture of harassment and discrimination and repeatedly told, Defendants Packer does not report sexual harassment, "we grade it."

3.      On October 5, 2009, Defendants Packer unlawfully terminated Plaintiffs, two of its highest performing and competent employees, because they had repeatedly exercised their respective rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. ("Title VII"), and complained, reported, objected to and protested Defendants' intolerable, shocking and offensive harassment, discrimination and hostile work environment.

4.      Both Plaintiffs have suffered severe and egregious injury and damage as a direct and proximate cause of Defendants' unlawful conduct as alleged herein. Plaintiffs bring this action seeking redress for Defendants' violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*. ("Title VII").

## PARTIES

### a. Plaintiff Davis

5.      Plaintiff Davis is an individual resident of Kane County, Illinois.

### b. Plaintiff Webb

6.      Plaintiff Webb is an individual resident of Fredericksburg, Virginia.

### c. Defendants Packer

7.      Defendant The Packer Group, Inc. is an Illinois Corporation with its principle place of business located at 1950 North Washington Street, Naperville, DuPage County, Illinois. It is a holding company with three wholly owned subsidiaries, one of which is Defendant Packer Engineering, Inc. The Packer Group, Inc. wholly controls, directs and operates Packer Engineering, Inc.

8.      Defendant Packer Engineering, Inc. is a wholly owned subsidiary of Defendant

2

The Packer Group, Inc. It is an Illinois corporation, doing business in the State of Illinois since at least July 21, 1965, with its corporate headquarters and principle place of business located at 1950 North Washington Street, Naperville, DuPage County, Illinois.

9.     As used in this Complaint, "Defendants" and/or "Packer" means both Packer Engineering, Inc. and The Packer Group, Inc., as well as all subsidiaries, agents, successors, parent corporations, etc. Defendants Packer is an employer as defined by Title VII.

## JURISDICTION AND VENUE

10.     Jurisdiction over the causes of action contained in this Complaint is conferred by *28 U.S.C. § 1331*, as same arises under the laws of the United States.

11.     Venue is proper in this judicial district under *28 U.S.C. § 1391(b)*, in that Defendants employed Plaintiff in this judicial district, Plaintiff resides in this judicial district, and all or a substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

## PROCEDURAL REQUIREMENTS

12.     Plaintiff Davis fulfilled all conditions precedent to the institution of this action under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A. § 2000e *et seq*.

13.     Plaintiff Davis filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") on or about January 25, 2010, alleging sexual harassment, gender discrimination, a hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq*.  *See* attached hereto as Exhibit A, *Danya Davis Charge of Discrimination.*

14.     The EEOC issued Plaintiff Davis a "Notice of Right to Sue (Issued on Request)" dated August 10, 2011. *See* attached hereto as Exhibit B*, Danya Davis Notice of Right to Sue.*

15.     Plaintiff Davis has timely filed this lawsuit within ninety (90) days from the date of receipt of her Notice of Right to Sue.

16.     Plaintiff Webb fulfilled all conditions precedent to the institution of this action under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C.A. § 2000e *et seq*.

17.     Plaintiff Webb filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") on or about February 16, 2010, alleging being subjected to a sexually offensive hostile work environment and retaliation for reporting, complaining about and protesting unlawful sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq*.  *See* attached hereto as Exhibit C, *Shannon Webb Charge of Discrimination.*

18.     The EEOC issued Plaintiff Webb a "Notice of Right to Sue (Issued on Request)" dated August 23, 2011. *See* attached hereto as Exhibit D*, Shannon Webb Notice of Right to Sue.*

19.     Plaintiff Webb has timely filed this lawsuit within ninety (90) days from the date of receipt of her Notice of Right to Sue.

## COMMON ALLEGATIONS

20.     For at least a decade, Defendants have engaged in a pattern and practice of gender and sexual harassment and discrimination against female employees, including Plaintiff Davis, ratification of a severe and pervasive hostile work environment and retaliating against those who oppose such.

21. During their respective employment by Defendants, Plaintiffs were each subjected to gender and sexual harassment, discrimination and/or a sexually offensive hostile work environment.

22. Both Plaintiffs were terminated, on the very same day, for their repeated complaints, reports and demands that Defendants address the ongoing, continuous, severe and pervasive gender and sexual harassment, discrimination and hostile work environment.

23. In addition to unlawful termination, both Plaintiffs suffered other adverse employment actions, such as being excluded from meetings and seminars, denied promotions and pay, denied bonuses, denied vacation time, heightened scrutiny, and other harassment in retaliation for their respective complaints, reports and protests of unlawful gender and sexual harassment, discrimination and hostile work environment.

24. There was no legitimate non-discriminatory or non-retaliatory basis for Defendants termination of Plaintiff Davis or Plaintiff Webb.

25. Both Plaintiffs repeatedly reported and complained, in detail, about the unlawful conduct alleged herein to management employees, as well as members of Defendants' Board of Directors, directors and executives.

26. Defendants' board members, directors and executives were involved in and directly engaged in the unlawful conduct alleged herein.

27. Both Plaintiffs suffered severe injuries and damages as a direct and proximate cause of Defendants' unlawful conduct, and violations of Title VII, as alleged herein, including but not limited to: lost wages, lost benefits, emotional distress and other related damages.

28. All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law.

**Plaintiff Davis**

29.     Plaintiff Davis is a female who was an employee of Defendants Packer, as defined by Title VII, for approximately nine (9) years, from on or around October 2000 through the date of her unlawful termination on October 5, 2009.

30.     Plaintiff Davis was terminated by Defendants Packer on October 5, 2009.

31.     Plaintiff Davis was terminated based on her gender and in retaliation for her exercise of rights under Title VII, reports of violations of Title VII, complaints and protests of severe and pervasive ongoing sexual harassment, complaints and protests of a shocking and offensive sexually hostile work environment and complaints and protests of Defendants Packer's unwillingness to stop, remediate, address or prevent ongoing violations of Title VII, despite its knowledge of the scope, severity and pervasiveness of the unlawful conduct.

32.     There was no legitimate non-discriminatory or non-retaliatory basis for Defendants to terminate Plaintiff Davis.

33.     Plaintiff Davis was a highly educated, motivated and dedicated employee that, at all relevant times, performed her job duties in an exceptional manner that met or exceeded Defendants' legitimate business expectations.

34.     Plaintiff Davis was qualified for her position with significant professional experience, a history of outstanding job performance and an impressive educational background that includes: an Associate degree in Paralegal Sciences, Bachelor of Arts in Human Services, Psychology & Sociology, Master in Adult Education, Developmental Studies, and a Doctorate in Management – Organizational Leadership.

35.     Plaintiff Davis commenced her employment with Defendants, in or around October 2000, as Defendants' Director of Techno-Litigation, after working for nine years in the

legal field.  In or about 2001/2002, Plaintiff Davis was promoted to Senior Director of Techno-Litigation. Plaintiff Davis was again promoted in or about the fourth quarter of 2007 to Vice President of Organizational Development.

36.     At all relevant times, Plaintiff Davis received excellent performance reviews, promotions and compensation increases.

37.     Throughout her employment, Plaintiff Davis was subjected to gender and sexual harassment, discrimination and a hostile work environment that escalated in 2008 and 2009. Defendants' executives, board of directors, directors, supervisors and employees, including but not limited to Defendants' President and Chief Technical Officer, Edward M. Caulfield ("Caulfield"), Defendants' Vice-President, John McKinney ("McKinney"), Defendants' Executive Vice President of Finance and Secretary of the Board, Charlotte A. Sartain ("Sartain") and Defendants' Chairman of the Board, and founder, Kenneth Packer, knew, participated and/or encouraged the gender and sexual harassment, discrimination and hostile work environment.

38.     Throughout her employment, Plaintiff Davis repeatedly complained and reported to numerous executives, directors, and employees of Defendants about the sexual harassment, illegal conduct and hostile work environment, including but not limited to Caulfield, Sartain and Defendants' Chief Executive Officer, Michael Koehler ("Koehler"). In response to her repeated complaints, the gender and sexual harassment, discrimination and retaliation escalated in late 2008 and early 2009. Plaintiff Davis documented the scope and severity of the increased sexual harassment, discrimination, hostile work environment and retaliation, and again made repeated reports and complaints to Defendants' executive level employees, including Defendant's Board of Directors.

39.     The sexual harassment, hostile work environment and gender discrimination was

severe, pervasive, ongoing, continuous, unwanted and uninvited. It included, but was not limited to the following:

a) Almost immediately upon commencing her employment with Defendants, Plaintiff Davis was given sexually suggestive pet names by male executives and board members, including "Stripper Boobs" and "High Beams" (in reference to her breasts);

b) Subjected to sexually suggestive comments and requests for sexual favors, for example, in front of several co-workers, Defendants' President and Chief Technical Officer, Edward M. Caulfield, grabbed Plaintiff Davis' head, shoved it into his lap and demanded: "Give me a blow job." Plaintiff Davis rejected his advances and told him that his conduct was inappropriate and unwelcome;

c) Subjected to openly vulgar and sexually derogatory and offensive discussions, comments and innuendos including but not limited to the following:

   i. Caulfield repeatedly calling female employees "cunt" and "bitch;"

   ii. Male employees, including but not limited to Caulfield, Tage Carlson and Aaron Jones, repeatedly making sexually offensive comments, jokes and sexual innuendos, including referencing, joking and making comments to female employees and/or about female employees' bodies. For example, referencing female employees' "tits" and asking if they knew what a "camel toe" is (vaginal area). Similarly, on almost a daily basis, Tage Carlson would stop at Defendants' employee, Penny Rusch's desk and make offensive and demeaning sexual and

gender comments, jokes and innuendos. In another instance Caulfield told Diane Hoffman that he would go with her for an audition for the show "Amazing Race" and go on the show " if I can sleep with you every night;"

iii. After Rose Walker had breast augmentation surgery, Caulfield publicly told her that she "failed miserably and if she had gone as big as Danya (in reference to Plaintiff Davis' breasts), she would have [Danya's] job;"

iv. Caulfield publicly commenting and bragging about how he "mind fucked women" and how he had caused female employees to have nervous breakdowns;

v. Caulfield repeatedly stating how glad he was that he had sons because he "only had to worry about one dick;"

vi. Male employees, including but not limited to Caulfield, Tage Carlson, Aaron Jones, Patrick Farrell and Robert Quinn, publicly watching and discussing pornographic videos and materials; and

vii. Defendant's employees, including but not limited to John Kidd, Scott Erdman and Tom Kuhn openly discussing sexual relationships and "conquests" of females, including female employees, and getting naked and sexual photos of females, including current and former female employees of Defendants.

d) Subjected to demeaning and derogatory gender based comments about women and the fact women should be "lucky" to have a job and deserved to be paid

9

much less than male counterparts. In one instance, Caulfield told Plaintiff Davis, "my son can do better than any woman," and pulled Plaintiff Davis from revising Defendants' policies and assigned it to his son who was interning with Defendants while in college. Additionally, during meetings Caulfield and other male employees would tell Plaintiff Davis not to "talk out of turn" as she was a female and that she should not question male employees;

e) Subjected to an extreme and outrageous sexually offensive working environment where male executives were permitted to routinely view pornography, make lewd comments, send offensive sexually explicit emails, make sexually gestures and even masturbate, in view of coworkers, without reprimand or reprisal. This behavior was recognized on a company wide basis as being acceptable and normal. Defendants' executives and employees would routinely state that Defendants did not report sexual harassment, but rather "graded" it;

f) Allowing male employees, including Patrick Farrell to set up video recording devices to record video of female employees, take pictures and watch female employees without their knowledge. Upon information and belief, on more than one occasion, Patrick Farrell showed such to other male employees;

g) Illegally using gender and age in making hiring and firing decisions. Defendant's executives, directors and board members, repeatedly refused/failed to terminate males as they had a "family to support." Plaintiff Davis and other females were repeatedly questioned as to why they continued to work since "you have a husband to take care of you" and they did not have

to work because their husbands made enough to support them. Similarly, Defendant's executives and directors would only hire young females that they were physically attracted to;

h) Plaintiff Davis was told by Defendant's executives and employees, including Sartain, that she needed to change her persona and clothing, as she was making herself a "sex symbol;"

i) Plaintiff Davis was told to stop complaining, advised that the harassers would not be subject to discipline or reprimand and told that if she wanted to keep complaining about sexual harassment, discrimination or a hostile work environment, that she would have to personally confront her harassers without any company support;

j) Despite numerous complaints to Defendants' executives, directors and board members, her harassers, including Caulfield, were allowed to continue and increase the sexual harassment and retaliation against her by spreading false rumors about her sexuality and sexual relations, unfairly excluding her from e-mails and meetings, denying her promotional opportunities and increased compensation, harassing her about the fact that she was making more money than Caulfield's "boys," (less qualified and experienced male coworkers), and ultimately terminate her; and

k) Kenneth Packer, the Chairman of the Board and founder of Packer Engineering, despite being specifically advised, with particularity and detail, by Plaintiff Davis and other employees, of the nature, scope and severity of the gender and sexual harassment, discrimination, hostile work environment

11

and retaliation, refused to take appropriate action.

40.    Plaintiff Davis made numerous detailed complaints to Defendants' management and executive employees.  Defendants' management and executive employees acknowledged the validity of her factual allegations, yet refused/failed to do anything to stop, mitigate, remediate or prevent the illegal conduct or the continued Title VII violations. For example, during her annual review in 2009, Koehler, acknowledged Caulfield's escalating gender and sexual harassment and discrimination, but told Plaintiff Davis that: "I know Ed [Caulfield] is an asshole, he will always be an asshole and you just have deal with it." "You have to use your psychology training, play the game and just deal." Koehler, and Defendants' Board of Directors, refused to discipline, reprimand, counsel, remediate or otherwise cause Caulfield to stop his unlawful conduct, because Caulfield was a highly utilized expert witness, in the automotive industry, and as such, generated substantial revenue for Defendants.

41.    In 2009, after her 2009 annual review, Caulfield subjected Plaintiff Davis to increased gender and sexual harassment and discrimination. Caulfield not only individually engaged in offensive and unwanted gender and sexual harassment and discrimination, he further encouraged other male employees to do the same and made it very clear that such conduct was welcome.  For example in addition to Caulfield calling Plaintiff Davis a "Sexually Dangerous Predator" and "Sexual Predator," Caulfield encouraged male employees, including Aaron Jones, Mark Fleming and Shawn Pergande, to do the same.

42.    Throughout early 2009, Plaintiff Davis consistently complained and reported the ongoing severe and pervasive gender and sexual harassment and discrimination to Defendants' Board of Directors and executives, including Koehler, Sartain, and Kenneth Packer, and was retaliated against for her complaints/reports including, but not limited to the following:

a) In January, 2009, Plaintiff Davis again complained to Defendants executives, including Chief Executive Officer, Koehler that employees cannot perform their work in a hostile and offensive environment, where the President of the Company, Caulfield, and other employees were watching pornography, making graphic sexual comments and utterances and even masturbating in full view of the employees. Koehler told her to stop complaining and reporting violations of Title VII;

b) During Plaintiff Davis's annual review in 2009, Plaintiff Davis was told by Defendant's executive leaders that she was doing a good job. However, Defendant's executives also told her that while Caulfield is a "bully" and a "asshole" you need to "play the game." Defendant's executives, including Sartain, went on to tell Plaintiff Davis that they "need to stop" Caulfield, but couldn't afford to stop him;

c) On January 23, 2009, Plaintiff Davis met with Defendants' Executive Vice President of Finance and Secretary of the Board, Sartain, who proceeded to tell Plaintiff Davis that she needed to realize that she is a "woman" working in a "man's world." Plaintiff Davis further reported to Sartain that, in retaliation for her complaints about his unlawful conduct, Caulfield had begun spreading rumors that she was "sexually pursuing" Jim Salmon (co-worker) and that it was impacting her job. In response, Sartain reiterated to Plaintiff Davis that she needed to accept abuse and comments from male employees, including Caulfield, as they would "never change" and further accept Caulfield's false rumors because Plaintiff Davis is "beautiful and smart," but needs to

13

remember that she is just a "female in a man's world." Defendants, again, refused to take any action to stop, remediate, address or prevent the ongoing sexual harassment, hostile work environment or retaliation;

d) On March 1, 2009, Plaintiff Davis met with Koehler and reported that Caulfield was continuing to sexually harass her, and other employees, including: asking her to her to jump out of a cake for him on his next birthday, pushing her head into his lap and telling her to give him a blowjob, making vulgar comments about women's bodies, and asking Plaintiff Davis and another female employee if they know what a "camel toes" (vaginal area) is while telling another male co-worker to explain to them what a "camel toe" is and show them a pornographic website that had pictures of "camel toes." Plaintiff Davis brought in documentation to support her complaint of sexual harassment, including emails, notes, records and other documentation, but Koehler told her that he did not want to know about it and did not want to see any of the documentation she had; and

e) On March 2, 2009, Sartain and Koehler both met with Plaintiff Davis and told her that, due to her complaints and reports, Caulfield did not want her to go to the DRI Product Liability conference. In response, Plaintiff Davis objected, alleged retaliation and again complained of ongoing harassment. Sartain and Koehler told Plaintiff Davis that they, nor anyone at Defendants, would reprimand, discipline or even address the issue with Caulfield. Plaintiff Davis advised Sartain and Koehler that she was afraid for her personal safety due to Caulfield's anger problems and that to upon information and belief he had

been charged with physically assaulting his own son. Plaintiff Davis reminded them that it was their duty, and Defendants' duty, under Title VII to stop the discrimination, harassment, hostile work environment and retaliation.

43.     Despite her detailed reports, Defendants knowingly and intentionally refused to take any action to stop its ongoing violations of Title VII.

44.     In or about February/March 2009, Plaintiff Davis again complained and reported the continued and ongoing harassment by Caulfield and other male employees. After further discussions with Koehler, he agreed there was a need to address the entire company and asked Plaintiff Davis to help prepare a presentation of a general overview of Title VII, gender discrimination and sexual harassment law, and Defendants' policies that required compliance with such (despite them being repeatedly ignored), to present during an upcoming employee meeting.

45.     In or about March 2009, Plaintiff Davis assisted with preparing the presentation and Koehler presented it to Defendants' employees. Despite ensuring Plaintiff Davis that all employees would be required to attend the presentation, not all employees were required to attend, including Caulfield. During the presentation, when Koehler started to discuss sexual harassment, male employees started laughing, making offensive sexual comments, jokes and sexual innuendos and stated the mantra that was repeated by Defendants' board members, executives, directors, supervisors and employees regarding sexual harassment "we don't report sexual harassment, we grade it."

46.     After the presentation on sexual harassment, Koehler invited any individuals with concerns or problems to report them to him or any other executive leader. Immediately after the sexual harassment presentation, Plaintiff Davis was approached by a female employee, Bernessa

Wilson ("Wilson"), who reported to Plaintiff Davis certain details of severe and egregious sexual harassment and an exceptionally sexually offensive hostile work environment, including such actions by Defendants' Vice-President, McKinney.

47.     Plaintiff Davis asked Wilson why she was just telling her now, and Wilson stated that she had not previously reported to Plaintiff Davis because she was aware of the gender and sexual harassment and discrimination Plaintiff Davis was being subjected to and told Plaintiff Davis "if you can't do anything for yourself, how do you think you can help me?"

48.     Plaintiff Davis instructed Wilson to immediately report the sexual harassment and hostile work environment directly to Koehler.

49.     Plaintiff Davis also immediately reported to Koehler the details of Wilson's report/complaint to Plaintiff Davis. In response, Koehler actually reprimanded Plaintiff Davis and told her that she was supposed to "insulate" him from having to deal with those issues.

50.     After complaining to Plaintiff Davis and Koehler, Wilson then complained to Defendants' Vice President of Materials, David Moore ("Moore"), but he refused to do anything to remediate or otherwise address McKinney's ongoing severe and pervasive sexual harassment, conduct, utterances and actions that clearly violated Title VII. Instead, Defendants terminated Wilson shortly after reporting the violations of Title VII, while McKinney continued to be employed.

51.     In April/May 2009, after the presentation on sexual harassment and complaints by Wilson, Defendants escalated its retaliation against Plaintiff Davis:

                a)   Defendants' employee, Nick Fioravante, informed Plaintiff Davis that she had
                     been intentionally and deliberately removed from an e-mail chain that
                     specifically related to her job responsibilities, because Caulfield was being

"petty" and "deliberately nasty" in retaliation for her complaints about him;

b) Caulfield intentionally ignored/removed Plaintiff Davis from making candidate selection and new hire decisions, and instead deferred all recruiting and new hire related tasks, activities and responsibilities to Sartain.

c) Caulfield openly disregarded and ignored Plaintiff Davis during meetings, including interrupting and talking when Plaintiff Davis was talking or doing presentations during meetings. For example, during one meeting Caulfield misinformed the group regarding money paid to recruiters and Plaintiff Davis attempted to correct him. Caulfield refused to acknowledge Plaintiff Davis' attempt to correct him and continued to talk over her; and

d) In early May 2009, Caulfield told Plaintiff Davis that she should not have her position and salary, rather she should be "barefoot and pregnant."

52. During the summer of 2009, in a meeting with Defendants' executives and Plaintiff Davis, Caulfield proposed that Defendants could save money by firing "all of the old and ugly women," specifically referencing Ginny Donati and Sharon Grosz, and decreasing all other women's salaries by fifty percent (50%). Plaintiff Davis advised the Board that Caulfield's "cost saving" strategy was illegal, a violation of Title VII, discriminated against women and older employees and would likely result in legal action.

53. In September 2009, Koehler demanded that Plaintiff Davis justify her salary because Caulfield thought she made too much, especially since she is a woman and his "boys" (male employees) weren't making that much. Koehler advised Plaintiff Davis that Caulfield wanted her salary to be reduced and the salaries of his "boys" be increased, including: Mark Fleming, Shawn Pergande and Aaron Jones. Plaintiff Davis objected and advised Koehler that it

17

was illegal for Defendants to reduce her salary because of Caulfield's discriminatory and retaliatory motives.

54.     A few days later, Koehler came into Plaintiff Davis' office and again demanded that she tell him how much she was earning, and when she told him, Koehler acrimoniously responded, "*That's a lot of money. Most the men around here don't make that kind of money.*" Koehler then asked Plaintiff Davis who she would recommend being laid off. Plaintiff Davis recommended two male employees, John Kidd and Tom Bundorf, be terminated as each of them had been disciplined for insubordination (ex. yelling at Defendants' Board Members) and/or were significantly underperforming as was evidenced by substantially deficient billings. When discussing their actions with Koehler and Kenneth Packer, Koehler and Kenneth Packer refused to terminate either, because they were men with families to support.

55.     October 5, 2009, Sartain and Koehler terminated Plaintiff Davis. In so doing, Sartain told Plaintiff Davis "you know how we feel about HR" and "you shouldn't have said 'no'." Koehler then walked Plaintiff Davis out of the building, and in saying goodbye, stated he was "sorry Caulfield won."

56.     There was no legitimate non-discriminatory basis for Defendants to terminate Plaintiff Davis.

57.     In fact, Defendants not only ratified Caulfield and other male employees' ongoing gender and sexual harassment, discrimination and retaliation against Plaintiff Davis, it actually permitted Caulfield to unjustly terminate her in retaliation for her repeatedly reports/complaints/protests of his and other male employees' violations of Title VII and other state and federal laws.

**Plaintiff Webb**

58.     Plaintiff Webb is a male who was an employee of Defendants Packer, as defined by Title VII, for over six (6) years, from on or around August 2003 through the date of his unlawful termination on October 5, 2009.

59.     Plaintiff Webb was terminated by Defendants Packer on October 5, 2009.

60.     Plaintiff Webb was terminated in retaliation for his exercise of rights under Title VII, reports of violations of Title VII, complaints and protests of severe and pervasive ongoing sexual harassment, complaints and protests of a shocking and offensive sexually hostile work environment and complaints and protests of Defendants Packer's unwillingness to stop, remediate, address or prevent ongoing violations of Title VII, despite its knowledge of the scope, severity and pervasiveness of the unlawful conduct.

61.     There was no legitimate non-discriminatory basis for Defendant's termination of Plaintiff Webb.

62.     Plaintiff Webb was a highly educated, motivated and dedicated employee that, at all relevant times, performed his job duties in an exceptional manner that met or exceeded Defendants' legitimate business expectations.

63.     Plaintiff Webb was qualified for his position with his professional experience, a history of outstanding job performance and an impressive educational background that includes: an esteemed career in the Marine Corps in which he received numerous decorations, medals and recognition for his exemplary conduct, a Bachelor of Science in Computer Science from Cantebury University in the United Kingdom, and IT certifications including certifications for Microsoft, Novell, H.P./Compaq and CompTIA.

64.     Plaintiff Webb commenced his employment with Defendants, in August 2003, in

19

the position of IT Coordinator. In or about 2005, he was promoted to IT Director.

65. Throughout his employment, Plaintiff Webb received excellent performance reviews, promotions and compensation increases. Plaintiff Webb routinely received "above average" reviews.

66. During his employment at Defendants Packer, Plaintiff Webb was repeatedly and continuously subjected to hostile working environment that was wrought with unwanted and uninvited sexually inappropriate comments, conduct and innuendo. The unlawful conduct included, but was not limited to:

   a. Repeatedly and continuously being sent sexually explicit, offensive and unwanted emails from Caulfield, and other male employees, including offensive jokes, comments, and lewd nude pictures of women;

   b. Repeatedly and continuously being sent, shown or seeing shown sexually explicit, offensive and pornographic videos from male employees, including Tage Carlson, and McKinney;

   c. Allowing the downloading, viewing and storage of sexually explicit, offensive and pornographic pictures, videos and other materials on Defendants Packer's server, public drives and computers by McKinney, Caulfield, Aaron Jones, Chris Schemel, Tage Carlson, and other male employees, in direct violation of Defendants' policies. Due to such, Plaintiff Webb, and other male and female employees who found such material to be offensive, were exposed to such offensive materials. For example, Plaintiff Webb was forced to work on Aaron Jones and McKinney's computers. In Aaron Jones computer, Plaintiff Webb found not only pornographic videos being stored on the desktop, but a

pornographic DVD in the CD-rom. In McKinney's computer, Plaintiff Webb found videos, pictures and even the use of "live" streaming pornographic materials by McKinney. Additionally, the use of such material was public. For example while working one day, Tage Carlson told Plaintiff Webb and other employees to check out a video they were publicly watching, which ended up being a pornographic video;

d.  Defendants' employees, including Aaron Jones, wearing shirts and clothes with offensive and sexually explicit pictures on them to work;

e.  Defendants' employees, including Aaron Jones, making sexually suggestive and offensive gestures at work. For example, on a regular basis when Aaron Jones saw a female that he thought was good looking, including Defendants' interns and employees, he would hump a door, door frame or another object;

f.  Being subjected to an environment of ongoing inappropriate, demeaning, derogatory, unwanted and uninvited lewd and sexual comments and conduct, including but not limited to the following:

   i.  Defendants' employees openly making/saying sexually explicit comments, stories, and jokes, including but not limited to the following:

      1.  Caulfield making public comments to Kim Stratman regarding her wanting to or having a "grudge fuck" with her ex-husband; and

      2.  Caulfield making repeated public demeaning and derogatory sexual comments to Carol Synal, Kim Stratman and Jen Long, including calling them a "cunt" and "bitch";

3. Tom Kuhn publicly making sexually suggestive comments regarding female employees and interns' feet. Tom Kuhn made it public knowledge about his sexual fetish about women's feet, including but not limited to commenting on female employees' feet/shoes and hanging a calendar in his office with women's feet in different styles of shoes;

ii. Offensive sexual pet names for female co-workers, including but not limited to calling Danya Davis "Stripper Boobs" and "High Beams" (in reference to her breasts);

g. Being subjected to ongoing inappropriate, demeaning and derogatory remarks about the female gender;

h. Repeatedly being told by female coworkers, including but not limited to Jen Long, Kim Stratman and Carol Synal, that Caulfield, and other male employees, were sending emails with offensive sexual comments and nude pictures to themselves and other female employees;

i. Repeatedly being told by numerous female employees that Defendants' Vice-President, McKinney, was viewing, downloading and watching pornographic videos, pictures and materials on his computer at work. Plaintiff Webb was advised, by the female employees, that McKinney would view pornographic videos with the audio turned up so everyone walking by him could hear the pornographic video playing even when his door was shut. Plaintiff Webb was advised, by the female employees, that McKinney would also masturbate while watching the videos, even doing so with his office door open and/or in view of

22

other employees. Plaintiff Webb reported the complaints that were being made to him to Defendants' Vice President of Materials, Moore, who acknowledged the conduct and stated "we are aware and are dealing with it" and "the women are dealing with it;"

j.  Being told he had to work on McKinney's computer, despite Defendants knowing that it contained pornography and that McKinney had used the computer while masturbating and for inappropriate and sexual behaviors. Plaintiff Webb complained to Moore and Sartain that he did not want to do any work on McKinney's computer due to McKinney using it to masturbate and other inappropriate sexual behaviors. Instead of stopping McKinney from using the computer for pornography and masturbation, Sartain refused to discipline McKinney, or address the complaints. Rather, Sartain purchased a new laptop and had Plaintiff Webb update software on the new laptop so he did not have to work on a computer that McKinney had used to view pornography, masturbate with and engage in other inappropriate sexual behaviors and lewd acts;

k.  Being forced to work in an environment that allowed, essentially ratified, McKinney's use of his computer to download and view pornographic videos and pictures, as well as masturbate and engage in lewd acts in full view of other employees; and

l.  Being harassed by Caulfield, and other male employees, for reporting and not engaging in the gender and sexual harassment and discrimination including but not limited to being called "chicken little," a "whiner" and a poor "Marine."

67.     From 2007 to 2009, Plaintiff Webb repeatedly reported and objected to the gender and sexual harassment, discrimination and hostile work environment to Defendants' executives, including but not limited to Moore, Kenneth Packer, and Sartain. Plaintiff Webb repeatedly and continuously protested the unlawful treatment of female employees.  Yet, despite his detailed reports and complaints, Defendants refused to do anything to stop, remediate, prevent, or otherwise address the ongoing severe and pervasive gender and sexual harassment, discrimination, and hostile work environment.

68.     Defendants ratified and encouraged gender and sexual harassment and discrimination.  In response to Plaintiff Webb's complaints, he was told repeatedly by other employees that Defendants "does not report sexual harassment we grade it."

69.     Plaintiff Webb continued to try to enforce Sexual Harassment Policies, even directly complaining to, protesting and demanding action from Kenneth Packer. Kenneth Packer's response to Plaintiff Webb trying to enforce Defendants' sexual harassment policies was to tell Plaintiff Webb, "we don't have HR, you are your own HR, we are a family here, family sometimes says and does things" and refused to take any action to enforce Defendants' gender and sexual harassment and discrimination policies or address Plaintiff Webb's complaints.

70.     On other occasions when Plaintiff Webb complained to Kenneth Packer, Kenneth Packer would tell Plaintiff Webb that he was being a "chicken little," "whiner" and that he needed to "toughen up, you are a Marine."

71.     After making repeated complaints and reports of the gender and sexual harassment, discrimination and hostile work environment, Plaintiff Webb was retaliated against in a number of way, including but not limited to:

a) In 2006/2007, Plaintiff Webb's salary was reduced, yet other similarly situated employees did not receive a salary reduction;

b) In approximately March 2008, Sartain falsely accused Plaintiff Webb of stealing property, refused to reimburse him for property he purchased for Defendants and refused to reimburse him for property of his that was stolen;

c) From 2008 to the date of his unlawful termination, Plaintiff Webb's salary was frozen and he was refused bonuses, while other employees were provided raises and bonuses;

d) From 2007 to the date of his unlawful termination, Defendants refused to award Plaintiff Webb a raise or bonus, despite having been promoted to IT Director earlier that same year and having received "above average" performance ratings, yet other similarly situated employees were not denied raises or bonuses;

e) Defendants refused to give Plaintiff Webb credit for business that he brought in for Defendants from the State's Attorneys' office. Plaintiff Webb later learned that Sartain took credit for business he brought in;

f) Repeatedly, forced Plaintiff Webb to cover for employees at sites in Naperville, IL and Ann Arbor, MI, while other employees were not required to do the same. For example, Plaintiff Webb was forced to work during the day in Naperville, then after work drive to Ann Arbor to cover a night shift, then turn around and drive back to Naperville to work the next day;

g) Repeatedly refused/denied Plaintiff Webb time off, vacation and hours that were provided to other employees including, Patrick Farrell;

h) Subjected to increased criticism and scrutiny of his work;

i) Terminated; and

j) Otherwise harassed and retaliated against for reporting, complaining of, protesting and refusing to engage in unlawful sexual and gender discrimination, harassment and a hostile work environment.

72. On October 5, 2009, Plaintiff Webb was terminated.

73. At the time of his termination, Plaintiff Webb was employed in the position of IT Director.

74. There was no legitimate non-discriminatory, non-retaliatory basis for Defendants to terminate Plaintiff Webb.

75. Approximately five months after being terminated Plaintiff Webb met with Kenneth Packer and John Nowicki, Sr. regarding his termination. Plaintiff Webb told Kenneth Packer and John Nowicki, Sr. that he was a good employee, had never been disciplined, had made the company money and even was responsible for Defendants receiving a Better Business Bureau award. In response to this, Kenneth Packer told Plaintiff Webb, "I can't look you in the face and tell you what we did was right, I know we were wrong."

76. Defendants not only ratified the ongoing sexual harassment, discrimination and retaliation against Plaintiff Webb, but it allowed Plaintiff Webb to be unjustly retaliated against and terminated for his complaints and objections to the violations of Title VII occurring in Defendants' company.

## COUNT I
## SEXUAL AND GENDER DISCRIMINATION, HARASSMENT, HOSTILE WORK ENVIRONMENT AND RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq. (Plaintiff Davis v. Defendants)

77.     Plaintiff Davis incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

78.     All conditions precedent to Count I have been satisfied.

79.     Plaintiff Davis was an employee of Defendants pursuant to Title VII from approximately October 2000 through October 5, 2009.

80.     Defendants are employers as defined by Title VII.

81.     At all times relevant to this cause of action, Plaintiff Davis was a "person" and "employee" of Defendants, and Defendants were her "employer" covered by and within the meaning of Title VII.

82.     The actions of Defendants, as perpetrated by its agents, executives, directors and board members, and as described and complained of herein, are unlawful employment practices in that they likely have the effect of discriminating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff Davis because of her gender and sex, in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq*.

83.     At all times relevant to this cause of action, Defendants failed to satisfy its duty under Title VII to refrain from discriminating against Plaintiff Davis based on her gender, allowing Plaintiff Davis to work in an environment free from unwelcome and unwanted sexual harassment and refrain from retaliating against her for exercising her rights and reporting unlawful violations of Title VII.

27

84.     Defendants failed to satisfy its duty under Title VII to prevent the ongoing severe and pervasive sexually hostile work environment, and to take action to immediately remediate, stop, prevent or otherwise effectively address the hostile work environment.

85.     Defendants allowed its board members, executives, directors, supervisors and employees, including but not limited to Caulfield, to sexually harass and/or discriminate against Plaintiff Davis based on her gender and to otherwise create, encourage, contribute to and ratify a sexually hostile and offensive work environment.

86.     Plaintiff Davis, and numerous other employees, repeatedly complained, reported and protested the severe and pervasive unlawful conduct alleged herein, and Defendants had extensive knowledge of, the scope, extent and pervasive nature of the gender and sexual discrimination, harassment and hostile work environment.

87.     Despite knowledge of the scope and extent of the severe gender and sexual discrimination, harassment and hostile work environment, and despite Plaintiff Davis and other employees' repeated complaints, reports and protests, Defendants refused to, in good faith, take any action to investigate, remediate, stop, prevent, or otherwise address the ongoing discrimination, harassment, hostile work environment and retaliation.

88.     By virtue of the Defendants' board members, executives, directors, and supervisors participation in, ratification of and inaction, Defendants intentionally subjected Plaintiff Davis to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the conditions of Plaintiff Davis' employment and by knowingly failing and refusing to protect Plaintiff Davis from those hostile and abusive conditions.

89.     After Plaintiff Davis reported the illegal gender and sexual discrimination, harassment, and hostile work environment, Defendants retaliated against Plaintiff Davis, as

alleged herein, by, in part, unjustly disciplining her, subjecting her to heightened job scrutiny, taking away job responsibilities, denying her pay and promotional opportunities, denying her opportunities to attend meetings and conferences, deliberately refusing to include her in job-related e-mails and correspondence, otherwise harassing and humiliating her and ultimately terminating her employment on or about October 5, 2009.

90.    Defendants knew, or should have known, that its actions were retaliatory and were further violations of Title VII and any alleged reasons to the contrary are pretextual.

91.    There exists a causal link between Plaintiff Davis availing herself of her rights under Title VII, her opposition of illegal activity in violation of Title VII, and Defendants' unlawful retaliation and termination of Plaintiff Davis on October 5, 2009.

92.    The discriminatory and retaliatory actions by Defendants, through its board members, executives, directors and supervisors, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws and the rights and sensibilities of Plaintiff Davis.

93.    Defendants engaged in the foregoing acts and conduct when they knew or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretextual. In fact, Plaintiff Davis specifically advised Defendants executives and directors Koehler, Caulfield, Kenneth Packer and Sartain that the conduct alleged herein was unlawful, violated Title VII and was legally actionable.

94.    Defendants' unlawful actions alleged herein directly and proximately caused Plaintiff Davis great mental anguish, humiliation, degradation, physical and emotional pain and suffering inconvenience, lost wages and benefits, and other consequential damages.

<u>**COUNT II**</u>
**<u>HOSTILE WORK ENVIRONMENT AND RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq.</u>**
**<u>(Plaintiff Webb v. Defendants)</u>**

95.     Plaintiff Webb incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

96.     All conditions precedent to Count II have been satisfied.

97.     Plaintiff Webb was an employee of Defendants pursuant to Title VII from approximately August 2003 through October 5, 2009.

98.     Defendants are employers as defined by Title VII.

99.     At all times relevant to this cause of action, Plaintiff Webb was a "person" and "employee" of Defendants, and Defendants were his "employer" covered by and within the meaning of Title VII.

100.     The actions of Defendants, as perpetrated by its agents, executives, directors and board members, and as described and complained of herein, are unlawful employment practices in that they likely have the effect of retaliating and depriving and/or tending to deprive equal employment to, and otherwise adversely affecting Plaintiff Webb in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.*

101.     At all times relevant to this cause of action, Defendants failed to satisfy its duty under Title VII to refrain from subjecting Plaintiff Webb to work in an environment charged with unwelcome and unwanted sexual harassment and offensive sexually charged conduct and to refrain from retaliating against Plaintiff Webb for exercising his rights and reporting unlawful violations of Title VII.

102.     Defendants failed to satisfy its duty under Title VII to prevent the ongoing severe and pervasive sexually hostile and offensive work environment, and to take action to

immediately remediate, stop, prevent or otherwise effectively address the harassment and hostile work environment.

103.     Defendants allowed its board members, executives, directors, supervisors and employees, including but not limited to Caulfield, Sartain and McKinney, to openly sexually harass and/or discriminate employees based on gender, and otherwise create, encourage, contribute to and ratify a sexually hostile and offensive work environment.

104.     Plaintiff Webb, and numerous other employees, repeatedly complained, reported and protested the severe and pervasive unlawful conduct alleged herein, and Defendants had extensive knowledge of, the scope, extent and pervasive nature of the gender and sexual discrimination, harassment and hostile work environment.

105.     Despite knowledge of scope and extent of the severe gender and sexual discrimination, harassment and hostile work environment, and despite Plaintiff Webb and other employees repeated complaints, reports and protests, Defendants refused to, in good faith, take any action to investigate, remediate, stop, prevent, or otherwise address the ongoing gender and sexual harassment, discrimination, hostile work environment or retaliation.

106.     By virtue of Defendants' executive employees, board members and directors participation in, ratification of and inaction, Defendants intentionally subjected Plaintiff Webb to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the conditions of Plaintiff Webb's employment and by knowingly failing and refusing to protect Plaintiff Webb from those hostile and abusive conditions.

107.     After Plaintiff Webb reported the illegal conduct alleged herein, Defendants retaliated against Plaintiff Webb, as set forth herein, by, in part, unjustly disciplining him, subjecting him to heightened job scrutiny, taking away job responsibilities, cutting his pay,

denying him pay raises and bonuses, forcing him to work unfavorable hours at unfavorable locations, and otherwise harassing and humiliating him and ultimately terminating his employment on or about October 5, 2009.

108.    Defendants knew, or should have known, that its actions were retaliatory and were further violations of Title VII and any alleged reasons to the contrary are pretextual.

109.    There exists a causal link between Plaintiff Webb availing himself of his rights under Title VII, his opposition of illegal activity in violation of Title VII, and Defendants' unlawful retaliation and termination of Plaintiff Webb on October 5, 2009.

110.    The discriminatory and retaliatory actions by Defendants, through its management agents, board members, executive employees and directors, were intentional and willful, and in deliberate disregard of and with reckless indifference to the federal laws and the rights and sensibilities of Plaintiff Webb.

111.    Defendants engaged in the foregoing acts and conduct when they knew or should have known that the same were in violation of Title VII and any alleged reasons to the contrary are pretextual.

112.    Defendants' unlawful actions alleged herein directly and proximately caused Plaintiff Webb great mental anguish, humiliation, degradation, physical and emotional pain and suffering inconvenience, lost wages and benefits, and other consequential damages.

**WHEREFORE**, Plaintiffs Davis and Webb demand judgment against Defendants as follows:

     i.     A declaratory judgment that the employment practices challenged herein are illegal and violate the rights secured to Plaintiffs;

     ii.     An order requiring the Defendants to initiate and implement programs that: (i) provide equal employment opportunities and a non-hostile, non-discriminatory and non-retaliatory work environment for employees; (ii) remedy the effects of the Defendants' past and present unlawful employment practices; and (iii) eliminate the continuing effects of the discriminatory practices described herein above;

     iii.     Damages sufficient to compensate each Plaintiffs for their respective injuries;

     iv.     Reinstatement or Front Pay;

     v.     Pre-judgment and post-judgment interest;

     vi.     Reasonable attorney's fees;

     vii.     Costs and expenses of bringing this action;

     viii.     Emotional Distress Damages;

     ix.     Punitive damages; and

     x.     Any and all other relief that this Honorable Court may deem just and equitable.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact and all triable issues raised by the Complaint.

Dated: November 7, 2011   Respectfully submitted,


          DANYA DAVIS and SHANNON WEBB


          FOOTE, MEYERS, MIELKE & FLOWERS, LLC


          /s/ Robert M. Foote
          Robert M. Foote, Esq. (#03124325)
          Matthew J. Herman, Esq. (#06237297)
          FOOTE, MEYERS, MIELKE & FLOWERS, LLC
          3 North Second Street, Suite 300
          Saint Charles, IL 60174
          Telephone: (630) 232-6333
          Facsimile:  (630) 845-8982

          Kathleen C. Chavez, Esq. (#6255735)
          CHAVEZ LAW FIRM, P.C.
          3 North Second Street, Suite 300
          Saint Charles, IL 60174
          Telephone: (630) 232-4480
          Facsimile:  (630) 845-8982

          Peter L. Currie, Esq. (#06281711)
          The Law Firm of Peter L. Currie, P.C.
          22 West Washington Street, Suite 1500
          Chicago, Illinois 60602
          Telephone: (630) 862-1130
          *Attorneys for Plaintiff*

**VERIFICATION**

I,  Danya Davis  being first duly sworn under oath hereby state that a Plaintiff in this action, that I have read the foregoing Complaint, and that the allegations contained herein are true and accurate to the best of my knowledge and belief.

Respectfully submitted,

**Danya Davis**

Subscribed and Sworn to before me
this  7  day of November, 2011.

Notary Public

## **VERIFICATION**

I, <u>Shannon Webb,</u> being first duly sworn under oath hereby state that I am the Plaintiff in this action, that I have read the foregoing Complaint, and that the allegations contained herein are true and accurate to the best of my knowledge and belief.

Respectfully submitted,

**Shannon Webb**

Subscribed and Sworn to before me
this ___ day of November, 2011.

Notary Public

# EXHIBIT A

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 440-2010-01872 |

**Illinois Department Of Human Rights** and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Danya C. Davis** | **(630) 761-3498** | **09-10-1972** |

| Street Address | City, State and ZIP Code |
|---|---|
| **430 N. Prairie St., Batavia, IL 60510** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **PACKER ENGINEERING INC.** | **201 - 500** | **(630) 505-5722** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1950 N. Washington St., Naperville, IL 60563** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest
**10-05-2009**

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I was hired by Respondent on or about October 2000. My most recent position was Vice President of Organizational Development. During my employment, I was subjected to derogatory comments, harassment, and sexual harassment. I complained of sex discrimination. On October 5, 2009, I was discharged.

I believe I have been discriminated against because of my sex, female, and retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC

JAN 2 5 2010

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Jan 25, 2010** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |

# EXHIBIT B

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To: **Danya C. Davis**<br>**430 North Prairie Street**<br>**Batavia, IL 60510**<br><br>**CERTIFIED MAIL  7011 0470 0002 4704 2313** | From: **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2000**<br>**Chicago, IL 60661** |

☐ *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2010-01872** | **Vittoria Incandela,**<br>**Investigator** | **(312) 869-8141** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒   More than 180 days have passed since the filing of this charge.

☐   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒   The EEOC is terminating its processing of this charge.

☐   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*          8/10/11

Enclosures(s)                                   **John P. Rowe,**                          *(Date Mailed)*
                                                       **District Director**

cc:      **PACKER ENGINEERING, INC.**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 440-2010-01872 |

| Illinois Department Of Human Rights | | and EEOC |
|---|---|---|
| *State or local Agency, if any* | | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Danya C. Davis** | **(630) 761-3498** | **09-10-1972** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **430 N. Prairie St., Batavia, IL 60510** | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **PACKER ENGINEERING INC.** | **201 - 500** | **(630) 505-5722** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **1950 N. Washington St., Naperville, IL 60563** | | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN<br>☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION<br>☐ OTHER *(Specify)* | Earliest          Latest<br>**10-05-2009**<br><br>☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I was hired by Respondent on or about October 2000. My most recent position was Vice President of Organizational Development. During my employment, I was subjected to derogatory comments, harassment, and sexual harassment. I complained of sex discrimination. On October 5, 2009, I was discharged.

I believe I have been discriminated against because of my sex, female, and retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

RECEIVED EEOC

JAN 2 5 2010

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Jan 25, 2010**<br>Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

# EXHIBIT C

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 440-2010-02077 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Mr. Shannon Webb** | **(630) 551-0519** | **05-31-1973** |

| Street Address | City, State and ZIP Code |
|---|---|
| **115 Kristine St., Oswego, IL 60543** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **PACKER ENGINEERING INC.** | **201 - 500** | **(630) 505-5722** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1950 N. Washington St., Naperville, IL 60563** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

RECEIVED EEOC
JAN 1 8 2010
CHICAGO DISTRICT OFFICE

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☒ RETALIATION ☐ AGE ☐ DISABILITY ☐ GENETIC INFORMATION ☐ OTHER *(Specify)* | Earliest    Latest **10-05-2009** ☐ CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I began employment with Respondent in May 2003. My position was I.T. Coordinator. Throughout my employment, I observed numerous acts of inappropriate behavior and sexual harassment. I complained to Respondent to no avail. On October 5, 2009, I was discharged.

I believe that I have been retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| ✗ 2/10/10    ✗ *[signature]* Date    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

# EXHIBIT D

EEOC Form 161-B (11/09)    **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To:  **Shannon Webb**<br>**4100 Chris Shan Court**<br>**Fredericksburg, VA 22408** | From:  **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2000**<br>**Chicago, IL 60661** |

**CERTIFIED MAIL  7011 1570 0001 8378 2362**

☐  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2010-02077** | **Vittoria Incandela,**<br>**Investigator** | **(312) 869-8141** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒  More than 180 days have passed since the filing of this charge.

☐  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒  The EEOC is terminating its processing of this charge.

☐  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

☐  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*John P. Rowe*                                    8/23/11

**John P. Rowe,**                                  *(Date Mailed)*
**District Director**

Enclosures(s)

cc:     **PACKER ENGINEERING, INC.**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA ☒ EEOC | 440-2010-02077 |

| Illinois Department Of Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Mr. Shannon Webb** | **(630) 551-0519** | **05-31-1973** |

| Street Address | City, State and ZIP Code |
|---|---|
| **115 Kristine St., Oswego, IL 60543** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **PACKER ENGINEERING INC.** | **201 - 500** | **(630) 505-5722** |

| Street Address | City, State and ZIP Code |
|---|---|
| **1950 N. Washington St., Naperville, IL 60563** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

RECEIVED EEOC
1 8 2010
CHICAGO DISTRICT OFFICE

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN | Earliest                    Latest |
| ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION | **10-05-2009** |
| ☐ OTHER (Specify) | ☐ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began employment with Respondent in May 2003. My position was I.T. Coordinator. Throughout my employment, I observed numerous acts of inappropriate behavior and sexual harassment. I complained to Respondent to no avail. On October 5, 2009, I was discharged.

I believe that I have been retaliated against for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| X 2/10/10          X (signature) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date          Charging Party Signature | |