**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DANYA DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 11-cv-07923 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| PACKER ENGINEERING, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Plaintiffs Danya Davis, Shannon Webb, and Bernessa Wilson have sued their former employer, Defendant Packer Engineering, Inc., alleging that it committed violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq*.[1] Specifically, Plaintiffs Davis and Wilson, both of whom are women, claim that Defendant unlawfully subjected them to a sexually-discriminatory hostile work environment and then retaliated against them for complaining by terminating their positions. Plaintiff Webb, a male former employee at Defendant, claims that he was unlawfully retaliated against for complaining about the sexually-discriminatory hostile work environment to which his female coworkers were subjected. In anticipation of the jury trial, the parties filed a total of 23 motions *in limine*. The Court ruled on 13 of those motions during the final pretrial conference on January 3, 2017.[2] This detailed Order provides additional explanation for the Court's rulings on the parties' remaining contested motions *in limine* as reflected in the minute entry dated January 13, 2017. The parties are reminded that the Court's

[1] Plaintiffs also sued The Packer Group, Inc. ("TPG"), but the Court granted summary judgment in TPG's favor and so that entity is no longer a defendant in the case.

[2] As reflected in the January 3, 2017 Order (Dkt. No. 161), at the final pretrial conference, the Court ruled on Plaintiffs' motions *in limine* nos. 1 and 3, as well as Defendant's motions *in limine* nos. 1, 2, 3, 5, 6, 7, 8, 12, 13, 14, and 18.

pretrial evidentiary rulings are necessarily preliminary and may be altered even if nothing unexpected happens at trial. *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006).

## I. Plaintiffs' Contested Motions *in Limine*

### A. Plaintiffs' Motion *in Limine* No. 2 (Dkt. No. 145)

Plaintiffs seek to bar all evidence and references to Defendant's claim that Plaintiff Davis had an affair with her coworker, Senior Vice President Andrew Neuhalfen. Plaintiffs contend that evidence Davis engaged in a consensual affair is irrelevant to this case and should be excluded pursuant to Federal Rule of Evidence 403, as it would be unduly prejudicial beyond any probative value. Plaintiffs also argue that the proffered evidence constitutes inadmissible character evidence that should be excluded under Federal Rule of Evidence 404(a)(1). In response, Defendant contends that the evidence will show not merely that Davis had an affair with Neuhalfen, but that she and Neuhalfen engaged in sexual intercourse at the workplace that was witnessed by other coworkers. Defendant also argues that the evidence is relevant to the matter of Davis's truthfulness and credibility, as she was married at the time of the affair.

A plaintiff asserting a sexual harassment claim under Title VII must show, among other things, that the complained-of conduct was "subjectively offensive." *Passananti v. Cook Cty.*, 689 F.3d 655, 664 (7th Cir. 2012). As the Seventh Circuit has explained, if a plaintiff's conduct shows "enthusiastic receptiveness" to the allegedly harassing conduct, then that plaintiff's claim fails. *Reed v. Shepard*, 939 F.2d 484, 491 (7th Cir. 1991). Here, if Davis in fact engaged in the same sort of explicit, public sexual conduct at the workplace as that of which she complains, then her conduct would be relevant to the jury's determination of whether her coworkers' sexual conduct at the workplace created a subjectively hostile work environment for her.

The Court finds that evidence of Davis's sexual conduct at the workplace is relevant and admissible insofar as the conduct was witnessed by other coworkers or carried out in a manner that demonstrates Davis did not care whether or not she was observed. Defendant is cautioned to take care to present its evidence of the sexual activity through a competent witness with personal knowledge of the events. Defendant will not be permitted to introduce testimony that consists of mere speculation by witnesses who did not actually see or hear the purported conduct. Evidence regarding other alleged sexual conduct by Davis—either outside the workplace or in the workplace but not viewable by others—is excluded, as any probative value of such evidence is outweighed by the potential prejudice to Davis. *See also* Fed. R. Evid. 412(a)(1); *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1104 (9th Cir. 2002), *as amended* (Feb. 20, 2002) (applying Rule 412 to sexual harassment claims and holding that evidence of plaintiff's sexual habits were not probative to "welcomeness" of alleged harassing conduct).[3]

The purportedly adulterous nature of Davis's sexual affair is not relevant for the purposes discussed above, however. And the Court rejects Defendant's argument that the extramarital nature of the affair is relevant to Davis's credibility. Any putative connection between Davis's alleged extramarital affair and her credibility is so attenuated as to make its probative value slight, while the potential for undue prejudice from highlighting Davis's or Neuhalfen's marital status would be significant. Put simply, the mere fact that Davis and Neuhalfen engaged in a sexual relationship while married to other people, by itself, is not necessarily indicative of dishonesty. Accordingly, Defendant will not be permitted to reference the purportedly adulterous nature of Davis's sexual conduct at the workplace.

[3] Plaintiffs are mistaken in arguing that the evidence of Davis's sexual conduct represents character evidence inadmissible under Rule 404(a)(1). The evidence is not being offered to show that on a particular occasion Davis acted in accordance with a character trait; rather, the evidence is offered to show that Davis was a participant in the same sexually-explicit work environment she now contends was hostile.

**B. Plaintiff's Motion *in Limine* No. 4 (Dkt. No. 147)**

Plaintiffs also seek to bar all evidence that Defendant went out of business after the events at issue here. Plaintiffs argue that the fact that Defendant went out of business significantly after Plaintiffs were terminated is irrelevant and highly prejudicial, and thus should be excluded pursuant to Rule 403. Defendant responds that the evidence is relevant to the issue of damages, as the financial condition of a defendant is a factor to be considered when awarding punitive damages, and that the evidence is relevant to its claimed financial motivations for terminating Plaintiffs. Finally, Defendant points out that many of the witnesses are former employees of Defendant and that, in order to avoid confusing the jury, it should be able to explain why these former employees no longer work for it.

Defendant is correct that the financial condition of the defendant is a factor to be considered in determining a punitive damages award. *See Waits v. City of Chicago*, 2003 WL 21310277, at *4 (N.D. Ill. June 6, 2003) (stating that the financial impact of punitive damages award on defendant is relevant factor) (citing *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21–22 (1991); *TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U .S. 443, 462 (1993); *Merriweather v. Family Dollar Stores of Ind., Inc.*, 103 F.3d 576, 581 (7th Cir. 1996)). Defendant thus has a right to present evidence on this factor in order to mitigate a punitive damages award.

At the same time, such evidence presents the potential for prejudice to both parties, for the jury may make a whole host of illicit judgments about the merits of a case involving a defunct company. The Court further determines that the fact Defendant is no longer in business has limited probative value for the other purposes cited by Defendant—*i.e.*, to show the financial condition of Defendant at the time that it terminated Plaintiffs and to explain why witnesses are no longer employed by Defendant. As a result, the Court will allow evidence that Defendant has

gone out of business, but will exclude unnecessary, duplicative, or overly cumulative evidence on this fact. The Court will also consider appropriate jury instructions regarding for what purposes the jury may consider this evidence.

## II.     Defendant's Contested Motions *in Limine*

### A.     Defendant's Motion *in Limine* No. 4 (Dkt. No. 143)

Defendant seeks to exclude evidence of alleged financial improprieties committed by its officers and employees, claiming that those improprieties are irrelevant to Plaintiffs' claims and potentially prejudicial. The alleged improprieties that Defendant seeks to have excluded relate to the company's involvement in the "New Vermillion" transaction involving the acquisition of a separate manufacturing entity, which is the subject of the shareholder derivative lawsuit *Caulfield v. Packer*, 10-ch-028475 (Cir. Ct. Cook County). The Court agrees with Defendant. This is not a fraud case or business dispute. Any alleged financial improprieties are not sufficiently related to Plaintiffs' allegations of discrimination, harassment, and retaliation to have significant probative value. Moreover, the suggestion that officers or employees of Defendant engaged in financial improprieties has the potential to cause undue prejudice. Finally, while the fact that Defendant was experiencing financial problems at the time of Plaintiffs' terminations may be relevant to Defendant's defense that the terminations were layoffs of financial necessity and not retaliation, the reasons for the purported financial problems are not particularly probative and introducing such evidence may lead to a (financial fraud) trial within a (discrimination) trial. For this reason, Defendant's motion is granted and evidence of the financial improprieties will be excluded. This ruling should not be understood to prevent Plaintiffs from challenging the credibility of Defendant's explanation for why Plaintiffs were terminated.

### B. Defendant's Motion *in Limine* No. 10 (Dkt. No. 143)

Defendant also seeks to exclude evidence of a December 2002 incident in which, according to Plaintiff Davis, her coworker, Ed Caulfield, pushed her head toward his groin and asked her to perform oral sex on him. Defendant argues that there is no written record of this incident and that it is time-barred. The Court fails to see the relevance of the lack of written record, however, as Davis presumably is able to testify and be cross-examined based on her personal recollection of the event. For reasons similar to those articulated in the Court's summary judgment opinion with respect to Plaintiff Webb's time-barred claims, even if the incident between Davis and Caulfield would not itself be actionable, it still may provide useful background information and context for Davis's non-time-barred sexual harassment claims. Such evidence also may bolster Davis's credibility regarding her non-time-barred claims. The motion is denied.

### C. Defendant's Motions *in Limine* Nos. 9, 15, 16, & 17 (Dkt. No. 143)

Defendant has also moved to exclude a whole host of sexually explicit conduct at its offices, including evidence that Plaintiffs' coworkers used sexist language and that Plaintiffs' coworkers watched pornography in the workplace. These motions are denied.

With respect to the sexist language, Defendant first argues that remarks made to other coworkers are irrelevant to Plaintiffs' claims. This is mistaken. First, the fact that employees made similar sexually-explicit remarks to other employees may bolster Plaintiffs' allegations. For example, Plaintiffs' allegations that Caulfield made sexually explicit remarks to other employees would tend to support their allegations that Caulfield harassed them similarly. *See Molnar v. Booth*, 229 F.3d 593, 603 (7th Cir. 2000) (holding that evidence of sexual harassment of others was relevant to show the likelihood that plaintiff was harassed). Moreover, comments made to other coworkers may provide support for the existence of a hostile workplace. Defendant's

reliance on *Janopoulos v. Harvey L. Walner & Assocs., Ltd.*, 866 F. Supp. 1086 (N.D. Ill. 1994), is misplaced. *Janopoulos* explicitly recognized that the harassment of coworkers could be relevant to a hostile work environment claim, but found that the plaintiff in that case did not establish that her supervisor's harassment of other female coworkers implicated plaintiff's own work environment. *Id.* at 1091. But here, Plaintiffs may be able to lay a proper foundation and avoid this problem and so the Court will not bar the evidence before trial. Defendant also argues that the alleged use of sexist language was so infrequent as to be insufficient to create a hostile workplace. But reviewing Defendant's motions *in limine*, there are myriad allegations of inappropriate comments. Whether the sum total was more than "occasional" and enough to contribute to a hostile work environment is firmly within the province of the jury to decide.

Defendant also seeks to exclude evidence that its employees watched pornography in the office. These allegations principally relate to John McKinney, Defendant's Director of Systems Failure Analysis and Senior Director of Industrial and Process Safety, who was one of the people for whom Plaintiff Wilson was assigned to work. Defendant first argues that McKinney was not watching pornography in the common areas of the workplace. But Plaintiffs contend the evidence will show that McKinney was watching pornography in a way that was exposed to Plaintiffs and that this is actionable as sexual harassment. This Court agrees that exposure to pornography in the workplace may be part of the totality of circumstances constituting a hostile work environment. *See Ammons–Lewis v. Metro. Water Reclamation Dist. of Greater Chicago*, 2004 WL 2453835, at *2 (N.D. Ill. Nov.1, 2004) (denying summary judgment on hostile work environment claim based, in part, on the consistent presence of pornography in the workplace); *Williams v. City of Chicago*, 325 F. Supp. 2d 867, 876 (N.D. Ill. 2004) (finding that, even though the mere presence of pornography in the workplace can affect both genders, it may be considered as part of the totality

of the circumstances impacting a female plaintiff's work environment). Defendant is free to argue otherwise, but the Court will not quiet Plaintiffs' opportunity to present their evidence.

Defendant next argues that some of the evidence of McKinney watching pornography—namely, the photographs and videos—were illegally procured without McKinney's or Defendant's consent and should be excluded on that basis. But there has been no determination that this evidence was actually procured illegally or that McKinney's or Defendant's consent was required. Moreover, even if the evidence was obtained illegally, Defendant has pointed to no authority requiring suppression of the evidence as an appropriate—let alone necessary—remedy. Thus, the Court will not exclude the evidence on that basis.

Finally, Defendant argues that evidence of McKinney viewing pornography should be barred because the alleged conduct does not indicate discrimination on the basis of sex but instead merely represents generally inappropriate conduct. Defendant is correct that a plaintiff asserting a Title VII sex discrimination claim must show that the alleged discrimination was "because of . . . sex." 42 U.S.C. § 2000e–2(a)(1); *Yuknis v. First Student, Inc.*, 481 F.3d 552, 554 (7th Cir. 2007). Here, however, the alleged conduct of viewing pornography—especially, as Plaintiffs contend, pornography that is by its nature demeaning to women—could be specifically offensive to women in the workplace. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 222 (2d Cir. 2004) (holding that comments and graphics that demeaned women can create a hostile work place); *Ensko v. Howard Cty.*, 2005 WL 1367084, at *2 (D. Md. June 7, 2005) (ruling that allegations of displaying pornography demeaning to women satisfies the "because of sex" element of Title VII). It is not a requirement that the conduct alleged to constitute sexual harassment be specifically directed at the plaintiff. *Yuknis*, 481 F.3d at 554 (stating that one could be subjected to sexual harassment even though "one was not singled out"). Nor is it a requirement that the conduct be

intended to cause distress or offense to the plaintiff. *Id.* ("A working environment may be deeply hurtful to women even though the men who created it were merely trying to please themselves, and were thus guilty of insensitivity rather than aggression."). Thus, repeated exposure to pornography that demeans women could have created a hostile workplace for Plaintiffs Davis and Wilson. Moreover, this evidence also adds context for those Plaintiffs' other allegations of conduct constituting sexual harassment. The Court will allow Plaintiffs to use this evidence as part of the totality of the circumstances to make their case to the jury.

**D. Defendant's Motion *in Limine* No. 11 (Dkt. No. 143)**

Defendant raises 15 hearsay objections, listed in his motion *in limine* as items (a) through (o). The statements at issue are described as follows:

(a) Sartain told Davis that Davis needed to "be more than a sex symbol."

(b) Sartain called Caulfield a "male chauvinist" who called women "cunts" and "bitches."

(c) Sartain told Caulfield to "behave."

(d) Koehler told Davis that Caulfield was "an asshole [but] you just have to deal with it."

(e) Wilson informed Davis of harassment and discrimination experiences, and of instances where pornography was being watched by an engineer while he masturbated.

(f) When asked during an EEOC investigation why nothing was done about the environment at Packer, Koehler replied that "in any work place there [are] inappropriate statements."

(g) When Davis complained to Koehler again in March 2009 of the discriminatory and hostile environment at Packer, despite being in possession of emails, notes, and other documentation evidencing the environment, Koehler said he didn't want to know about it.

(h) When Davis complained to Sartain of the discriminatory and hostile environment at Packer in January 2009 and informing her of rumors that

Davis was "sexually pursuing employees," Sartain replied that Davis was "living in a man's world."

(i) When Davis complained to Koehler about the masturbation and pornography viewing of an engineer at Packer, Koehler replied that she was supposed to "insulate" him from those issues.

(j) Koehler advised Davis that Caulfield wanted her salary decreased so male employees could be paid more, agreeing with Caulfield that Davis was making "too much money."

(k) After Davis was terminated, Koehler told her that "Caulfield won."

(l) Webb informed Kenneth Packer, Defendant's founder and Chairman of the Board, of the violations of Defendant's sexual harassment policies, but Kenneth Packer replied by telling Webb that Defendant did not have an HR department and that employees were expected to act as their own HR department in such situations.

(m) When Webb complained of violations of Defendant's sexual harassment policies, he was called a "whiner," and a "chicken little," and was told that he was a poor Marine.

(n) After Webb was terminated, Kenneth Packer told Webb, "What we did was wrong. That wasn't right."

(o) Caulfield suggested firing "all of the old and ugly women" to cut costs.

Many of these statements—specifically, (a), (c), (d), (f), (g), (h), (i), (m), and (o)—do not appear to be hearsay at all, as they are not "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2).

Moreover, statements (b), (j), and (k) were made by either Charlotte Sartain or Mike Koehler, who were employees of Defendant at the time, and thus the statements are not hearsay either. *See* Fed. R. Evid. 801(d)(2)(D). Defendant alleges that these statements were not made in the scope of Sartain's and Koehler's employment and therefore not properly considered statements by a party-opponent. But Sartain's and Koehler's statements were made in the context of human resources decisions and thus do appear to be within the scope of their employment.

Similarly, statements (l) and (n) were allegedly made by Kenneth Packer, the former Chairman of the Board and founder of Defendant, about company policy and human resources decisions. Thus, these hearsay objections are presently overruled and the evidence will not be excluded pretrial. Defendant may raise these objections at trial if Plaintiffs' fail to establish a proper foundation for the admissibility of the evidence.

Finally, statement (e) does appear to be hearsay, as it is an out-of-court statement offered for the truth of the matter asserted. However, Defendant has not provided sufficient context for this Court to determine whether or not a hearsay exception might apply. For example, it is not clear the time frame in which Wilson made the statement to Davis. If it was in the immediate time frame after she witnessed the alleged incident, then it may be covered by the hearsay exception for "present sense impression[s]." Fed. R. Evid. 803(1). The Court will not rule on this hearsay objection pretrial, but will allow Defendant may raise the objection at trial if Plaintiffs fail to lay a proper foundation for the admissibility of the evidence.

**E. Defendant's Motion *in Limine* No. 19 (Dkt. No. 143)**

Finally, Defendant seeks to exclude all evidence of damages relating to Plaintiff Wilson's claim of improper termination. Defendant argues that Wilson did not complain of her termination in her EEOC charge and thus her claim is administratively barred. This is mistaken. The Seventh Circuit has stated that "a plaintiff alleg[ing] retaliation for having filed a charge with the EEOC need not file a second EEOC charge to sue for that retaliation." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013). Here, Wilson filed her first EEOC charge in December 2009. She alleges that Defendant rescinded her promotion offer in retaliation for her having filed that EEOC charge. Consequently, in February 2010, she filed another EEOC charge based on the alleged retaliation and was subsequently terminated in September 2010, which she alleges was in

response to her having filed the EEOC charges. *Luevano* is therefore directly applicable to this case and Wilson was not required to file an EEOC charge to complain about the retaliatory termination arising out of her prior EEOC charges. Thus, the Court will not exclude the evidence of damages relating to Wilson's improper termination claim.

## III. Documentary Objections

The parties have each raised numerous objections to documentary exhibits. Both sides have objected to various documents as lacking foundation, inadmissible hearsay, and lacking relevance. As with its motions *in limine*, the Court's treatment of objections to documents prior to trial is necessarily preliminary and the course and presentation of evidence may alter it. With that in mind, the Court has reviewed the documents and overrules the parties' pretrial relevance objections. Based on the current record, the Court cannot find that any of the contested documents is not relevant to any matter to be decided at trial.

The Court notes that Defendant's exhibits 7, 9, and 11 are employee policy materials, which Defendant claims are relevant because they deal with the propriety of Plaintiff Wilson videotaping McKinney in the workplace. The Court concludes that these materials may be relevant to showing Defendant's purported motivation in terminating Wilson's employment ***if*** violation of company policy is offered as a reason for termination. Otherwise, the materials do not appear relevant and will be excluded at trial. Regardless of the admissibility of the policy materials (as the Court ruled above with respect to Defendant's Motions *in Limine* Nos. 15 and 17), any videotapes and photos that Wilson took of McKinney, even if in violation of employee policy, are relevant and admissible. Defendant may not use exhibits 7, 9, and 11 to challenge before the jury the Court's determination on the admissibility of evidence.

The Court will defer its rulings on the foundation and hearsay objections until trial. Determinations of whether certain exhibits should be excluded because Defendant failed to produce them during discovery are also deferred pending verification by Defendant of whether the contested documents were in fact produced.

ENTERED:

Dated: January 16, 2017

Andrea R. Wood
United States District Judge