# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DANYA DAVIS, SHANNON WEBB and BERNESSA WILSON, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ) |
| PACKER ENGINEERING, INC. | ) ) |
| Defendant. | ) ) |

Case No. 11-cv-07923

Honorable Judge Andrea R. Wood

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO REDUCE JURY VERDICT BASED ON TITLE VII STATUTORY DAMAGES CAP

NOW COMES Plaintiffs, by and through their undersigned counsel of record, and for their Response in Opposition to Defendant's Motion to Reduce Jury Verdict based on Title VII Statutory Damages Cap, and in support thereof, state as follows:

### INTRODUCTION

Plaintiffs Danya Davis, Bernessa Wilson and Shannon Webb filed a lawsuit against their former employer, Packer Engineering, Inc. ("Defendant" or "the company"), pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 *et seq*. Plaintiffs Davis and Wilson each brought two claims against Defendant: a hostile work environment claim and a retaliation claim. Plaintiff Webb brought a single claim of retaliation against Defendant. The matter proceeded to an eleven-day jury trial. The Jury awarded Plaintiff Davis $150,000 in compensatory damages and $3,000,000 in punitive damages for her hostile work environment claim. The Jury awarded Plaintiff Wilson $300,000 in compensatory damages and $3,000,000 in punitive damages for her hostile work environment claim. The Jury found in favor of Defendant with respect to the retaliation claims.

Defendant now moves the Court to reduce the Jury's verdict based on the statutory caps set forth in 42 U.S.C. § 1981a(b)(3)(A), and asks the Court to apply a *pro rata* reduction with respect to the compensatory and punitive damages. Plaintiffs recognize that the Jury's verdict is subject to a statutory cap as stated in 42 U.S.C. § 1981a(b)(3). However, Plaintiffs disagree with Defendant's analysis as to which statutory cap applies, and disagree as to Defendant's proposed method of reducing the compensatory and punitive damages *pro rata*. As such, Plaintiffs respectfully request that this Court enter a verdict that conforms to the appropriate statutory cap, 42 U.S.C. § 1981a(b)(3)(B), and conforms to the Seventh Circuit's law concerning apportioning damages under a Title VII statutory cap.

## BURDEN OF PROOF

A defendant bears the burden of proof in establishing the number of employees for the purposes of establishing entitlement to a Title VII damages cap. *Geraty v. Vill. of Antioch*, No. 09 C 6992, 2014 WL 5801440, (N.D. Ill. Nov. 7, 2014). This district has articulated that it is reasonable to place the burden of establishing the number of employees on a defendant given the fact that a defendant employer is in a better position to provide information regarding its employees. *Mendez v. Perla Dental*, No. 04C4159, 2008 WL 821882, at *4 (N.D. Ill. Mar. 26, 2008), *aff'd in part*, 646 F.3d 420 (7th Cir. 2011).

# ARGUMENT

I. **THE APPROPRIATE TITLE VII STATUTORY CAP IS $100,000 COMPENSATORY DAMAGES FOR PLAINTIFF DAVIS AND $100,000 COMPENSATORY DAMAGES FOR PLAINTIFF WILSON.**

**A. Defendant has failed to carry its burden in establishing that the company employed 100 employees or less during the relevant time period which would warrant a reduction in the verdict to $50,000 per prevailing plaintiff.**

Defendant has failed to provide Court with sufficient evidence to show that the company employed 100 employees or less during the relevant time period. To begin, 42 U.S.C. § 1981a(b)(3) establishes damages caps in Title VII cases. The statute provides:

> The sum of the amount of compensatory damages awarded ... for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses . . . shall not exceed, for each complaining party—
>
> (A) in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;
>
> (B) in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; [and]
>
> (C) in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000 . . .

42 U.S.C. § 1981a(b)(3). Accordingly, Title VII's statutory caps are determined by the number of employees a company employed during the relevant time period. *See* 42 U.S.C. § 1981a(b)(3). Courts consistently have held that the phrase "current calendar year" refers to the year in which the alleged discrimination occurred. *Komorowski v. Townline Mini-Mart & Rest.*, 162 F.3d 962, 965 (7th Cir. 1998). In harassment cases, the operative year(s) are the years in which the harassment occurred and the preceding year. *See Mendez v. Perla Dental*, No. 04C4159, 2008 WL 821882, at *3 (N.D. Ill. Mar. 26, 2008) *aff'd in part*, 646 F.3d 420 (7th Cir. 2011) ("In the

instant action, Mendez alleged that she was unlawfully harassed beginning in June 2002 and continuing through April 2003 . . . Thus, the time period relevant to determining punitive damage caps is the years in which the violations occurred, 2002 and 2003, and the preceding year, 2001"). In this matter, Plaintiffs and Defendant agree that the relevant time period is calendar years 2008 and 2009.

With respect to determining the appropriate number of employees under the employ of a company, the Seventh Circuit has held that the payroll method should be used to determine whether an employment relationship exists between an individual and the alleged employer in Title VII cases. *Mizwicki v. Helwig,* 196 F.3d 828, 831 (7th Cir.1999) (citing *Walters v. Metro. Educ. Enters., Inc.,* 519 U.S. 202, 205–07, 117 S.Ct. 660, 136 L.Ed.2d 644 (1997)). The payroll method should be used to determine a relationship between an individual and an employer because "the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll." *Id.* The payroll method is used when analyzing whether an employer meets Title VII's fifteen-employee minimum threshold as an element of a plaintiff's *prima facia* case, and is used to determine the appropriate statutory cap in the post-trial, jury verdict reduction context. *Compare Smith v. Castaways Family Diner*, 453 F.3d 971, 973 (7th Cir. 2006) *with Geraty v. Vill. of Antioch*, No. 09 C 6992, 2014 WL 5801440, at *2 (N.D. Ill. Nov. 7, 2014).

In the case at hand, Defendant attached "payroll summary" records and an affidavit of former Executive Vice President of Finance, Charlotte Sartain, as an exhibit to support its motion to reduce the jury verdict. (ECF Dkt. #200-1). The Sartain affidavit purports to include "[t]rue and correct copies of the relevant payroll records showing the number of employees" as an exhibit. (ECF Dkt. 200-1 at ¶ 10). The Sartain affidavit concludes, "At no time did Packer Engineering

have more than 101 employees during the calendar years 2008 and 2009." (ECF Dkt. 200-1 at ¶ 9). Sartain's conclusion is simply wrong.

The payroll summaries attached to the Sartain affidavit are incomplete in that they are missing pages. For example, the Sartain affidavit represents to include, *inter alia*, a payroll summary for the pay period ending January 31, 2008. (*See* ECF Dkt. #200-1, Page ID 2697 – 2699). The bottom right corner of the January 31, 2008 payroll summary documents indicate a page sequence. There are 3 pages of the January 31, 2008 payroll summary documents attached: page 1, page 2, and page 4. Page 3 is missing, and it is unclear as to whether page 4 is truly the final page for the January 31, 2008 payroll summary. Similarly, the March 31, 2008 payroll summary documents jump from page 1 to page to page 5. (ECF Dkt. #200-1, Page ID 2703 – 2705).

Furthermore, each payroll summary is only for the preceding pay *period* and not the preceding *month* as represented in the Sartain affidavit. Illinois law requires that employers pay their employees "at least semi-monthly." 820 Ill. Comp. Stat. Ann. 115/3. Therefore, half of the relevant data is not even considered in the Sartain affidavit.

As such, the conclusions contained in the Sartain affidavit regarding Defendant's number of employees are not reliable. Defendant, in its motion, has offered no other evidence that the company employed 100 employees or less during the relevant time period on a weekly basis. Defendant has failed to provide Court with sufficient evidence to show that the company employed 100 employees or less during the relevant time period on a weekly basis. *See Mendez v. Perla Dental*, No. 04C4159, 2008 WL 821882, at *4 (N.D. Ill. Mar. 26, 2008), aff'd in part, 646 F.3d 420 (7th Cir. 2011) (finding that Defendants had been evasive as to the number of employees in their company and did not carry their burden in establishing a basis for their proposed statutory

cap). Based on the data produced by Defendant, it is not possible for this Court to make the statutory determination of the number of "employees in each of 20 or more calendar weeks in the current or preceding calendar year." *See* 42 U.S.C. § 1981a(b)(3).

### B. The evidence supports the fact that Defendant employed between 101 and 200 employees during the relevant time period.

Not only has Defendant failed to carry its burden in showing that the company employed 100 employees or less during the relevant time period, but the evidence supports the fact that Defendant employed between 101 and 200 employees during the relevant time period. Subsequent to filing Defendant's motion, defense counsel recently produced complete payroll summaries for the last pay period of each month for the calendar years 2008 and 2009. A copy of the complete payroll summaries are attached hereto as Exhibit A.

The complete payroll summaries contradict the conclusions set forth in the Sartain affidavit. For example, the chart attached to the Sartain affidavit that summarizes the total employees for each month in 2008 and 2009 states that Defendant employed 91 total employees in January of 2008. (ECF Dkt. #200-1, Page ID 2696). However, the January 31, 2008 complete payroll summary indicates that Defendant employed 108 employees in January 2008. The discrepancy is critical: Defendant argues that Defendant employed less than 101 employees during the relevant time period warranting a $50,000 cap per prevailing plaintiff. Plaintiffs argue that Defendant employed between 101 and 200 employees during the relevant time period and the $100,000 cap per plaintiff is appropriate. The complete payroll summaries support Plaintiffs' argument.

Defendant cannot escape reality by asserting that not all of the individuals listed on the complete payroll records were Defendant's[1] employees. It is nonsensical for an employer to remunerate, via formal payroll, non-employees. To the contrary, "the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll." *Mizwicki v. Helwig*, 196 F.3d 828, 831 (7th Cir. 1999). In fact, defense counsel confirmed that the company code, 38A, listed at the bottom of the complete payroll summaries, references Defendant "Packer Engineering, Inc." (*See* Exhibit B, March 9, 2017 email from James K. Borcia).

Finally, Defendant has cited no case law in its motion to support the notion that a company's payroll records may reflect both employees *and* non-employees. The fact of the matter is the complete payroll summaries showcase an accurate depiction of Defendant's employees. This is, of course, in compliance with the Fair Labor Standards Act requirement that, "Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records *of the persons employed by him* and of the wages, hours, and other conditions and practices of employment maintained by him . . ." 29 U.S.C. § 211(c) (West) (emphasis added).

According to the complete payroll summaries, Defendant's total employees for the last pay period of each month in the years 2008 through 2009, using the payroll method, are as follows:

| Payroll Period Ending | Payroll Employees |
|---|---|
| January 31, 2008 | 108 |
| February 29, 2008 | 99 |
| March 31, 2008 | 111 |
| April 30, 2008 | 105 |
| May 31, 2008 | 111 |
| June 30, 2008 | 109 |
| July 31, 2008 | 126 |
| August 31, 2008 | 127 |
| September 30, 2008 | 91 |

---

[1] Specifically, Packer Engineering, Inc. opposed to other "related" Packer entities.

| | |
|---|---|
| October 31, 2008 | 90 |
| November 28, 2008 | 90 |
| December 31, 2008 | 100 |
| January 31, 2009 | 102 |
| February 29, 2009 | 92 |
| March 31, 2009 | 90 |
| April 30, 2009 | 89 |
| May 31, 2009 | 98 |
| June 30, 2009 | 135 |
| July 31, 2009 | 136 |
| August 31, 2009 | 118 |
| September 30, 2009 | 89 |
| October 31, 2009 | 90 |
| November 30, 2009 | 94 |
| December 31, 2009 | 113 |

As the table above indicates, Defendant employed in excess of 100 payroll employees in the last pay period of 7 months in the calendar year 2008. Defendant employed in excess of 100 payroll employees in the last pay period of 5 months in the calendar year 2009. This is evidence, utilizing the payroll method (and Defendant's suggestion that the last pay period of the month reflects the number of employees for each week in that month), that Packer Engineering, Inc. employed in excess of 100 employees for more than 20 weeks in calendar 2008 and 2009. Finally, the fact that Defendant employed in excess of 100 employees is supported by the trial testimony of Sartain. Although the trial transcripts are not yet available, Sartain testified on direct examination that Defendant employed approximately 150 employees. Accordingly, the statutory cap set forth in 42 U.S.C. § 1981a(b)(3)(4), allowing $100,000 in compensatory damages to Plaintiff Davis and $100,000 in compensatory damages to Plaintiff Wilson is applicable to this matter.

## II. THE COMPENSATORY AND PUNITIVE DAMAGE JURY VERDICTS SHOULD NOT BE REDUCED *PRO RATA*.

Plaintiff Davis and Plaintiff Wilson's compensatory and punitive jury verdicts should not be reduced *pro rata*. Defendant, in its motion, argues that Plaintiff Davis and Plaintiff Wilson's verdict awards must be reduced *pro rata*. Defendant fails to cite any Seventh Circuit case law that supports the theory that damages subject to a Title VII statutory cap should be apportioned *pro rata*.

Perhaps the reason Defendant fails to cite any Seventh Circuit case law in support of its *pro rata* reduction theory is that Seventh Circuit case law stands for the exact opposite principle. *See Lust v. Sealy, Inc*., 383 F.3d 580, 589 (7th Cir.2004). In the *Lust* case, the Seventh Circuit stated that, in apportioning damages under a Title VII cap, "the sensible thing for the judge to do is ***not to make a pro rata reduction*** . . . but instead to determine the maximum reasonable award of compensatory damages, subtract that from [the applicable statutorily capped amount], and denote the difference in punitive damages." *Lust v. Sealy, Inc*., 383 F.3d 580, 589 (7th Cir.2004); *see also U.S. E.E.O.C. v. Custom Companies, Inc.,* No. 02 C 3768, 2007 WL 734395, at *8 (N.D. Ill. Mar. 8, 2007) ("The Seventh Circuit suggests that the preferred method for reducing awards is to leave compensatory damages intact and lower punitive damages as necessary to bring the total under the cap (rather than reducing the compensatory damages or reducing both *pro rata*)").

Here, Plaintiff Davis and Plaintiff Wilson's compensatory verdicts exceed the $100,000 cap. Therefore, this Court should not reduce the compensatory verdicts *pro rata*, with the punitive verdicts. In accord with the mandate of the Seventh Circuit, the Court should enter judgments in favor of Plaintiff Davis and Plaintiff Wilson in the amount of $100,000 as compensatory damages.

# CONCLUSION

WHEREFORE, for all the aforementioned reasons, Plaintiffs respectfully request that this Honorable Court deny Defendant's motion and enter judgments in the amount of $100,000 as compensatory damages for Plaintiff Davis and $100,000 as compensatory damages for Plaintiff Wilson.


Dated: March 31, 2017    Respectfully submitted,

FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC

By: /s/Kevin P. Noll
Craig S. Mielke
Kathleen C. Chavez
Kevin P. Noll
FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite #200
Geneva, IL 60134
Phone: (630) 232 7450

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 31, 2017, I electronically filed the foregoing *Plaintiff's Response in Opposition to Defendant's Motion to Reduce Jury Verdict based on Title VII Statutory Damages Cap* with the clerk for the U.S. District Court, Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented to accept this Notice as service by electronic means:

James K. Borcia
TRESSLER LLP
233 South Wacker Drive
22nd Floor
Chicago, IL 60606
jborcia@tresslerllp.com

                                                             /s/Kevin P. Noll