**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DANYA DAVIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 11-cv-07923 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| PACKER ENGINEERING, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This case went to trial before a jury on claims by Plaintiffs Danya Davis and Bernessa Wilson that Defendant Packer Engineering, Inc. ("Packer") subjected them to a hostile work environment and retaliated against them for complaining, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, as well as a retaliation claim by Plaintiff Shannon Webb against Packer under the same statute. The jury found in favor of Packer on all three Plaintiffs' retaliation claims but in favor of Davis and Wilson on their hostile work environment claims. Now before the Court are three post-trial motions by Packer: motions for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b) as to each of Davis and Wilson (Dkt. Nos. 236, 238) and a motion for a new trial pursuant to Federal Rule of Civil Procedure 59 (Dkt. No. 240). For the reasons discussed below, the motions are denied.

## BACKGROUND

Wilson and Davis both claimed that, while working at Packer, their co-workers subjected them to a hostile work environment because of their sex. At trial, Wilson's claim was supported primarily by evidence that she heard and saw a male co-worker watching pornography and masturbating in his glass-walled office during the work day, over the course of many months and

often several times a day. Meanwhile, in support of her claim, Davis presented evidence at trial regarding a range of conduct, including male co-workers watching pornography in their offices, as well as co-workers' frequent use of the words "bitch" and "cunt" to refer to Davis and other female Packer employees; a male co-worker referring to Davis as a "sexually dangerous woman" and a "sexual predator" to other staff members; that same co-worker suggesting Davis's place was to be at home, barefoot and pregnant; and similar regular and frequent comments by male Packer employees. Wilson and Davis both also presented evidence that they reported the conduct to Packer executives multiple times, that Packer did nothing to stop the conduct, and that instead Davis and Wilson were wrongfully terminated in retaliation for reporting the unlawful hostile work environment. Webb, the lone male plaintiff, also claimed that Packer wrongfully terminated him in retaliation for reporting the unlawful hostile work environment that his female coworkers were facing.

After an eleven-day trial during which it heard from 25 witnesses and considered 93 exhibits, the jury returned a defense verdict for Packer on all three retaliation claims but found in favor of Wilson and Davis on their hostile work environment claims. The jury awarded Davis $150,000 in compensatory damages and $3,000,000 in punitive damages, and awarded Wilson $300,000 in compensatory damages and $3,000,000 in punitive damages. On Packer's motion, the Court subsequently reduced the jury verdicts to $50,000 in compensatory damages and $0 in punitive damages for each prevailing Plaintiff pursuant to Title VII's damages cap for employers with more than 14 but fewer than 101 employees. Packer now asks this Court to enter judgment in its favor notwithstanding the jury's verdicts against it or, alternatively, to order a new trial.

## DISCUSSION

## I.      Packer's Motions for Judgment as a Matter of Law

A court may grant judgment as a matter of law against a party who has been fully heard at trial if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party." Fed R. Civ. P. 50(a)(1); *see Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 300–01 (7th Cir. 2009). Put another way, the jury's verdict must stand unless no rational jury could have returned such a verdict. *Id.* at 301. In deciding a Rule 50 motion, a court "do[es] not weigh evidence or assess the credibility of witnesses. Instead, [it] draw[s] all reasonable inferences in favor of the nonmoving party." *Id.* (citations omitted).

As the jury was instructed, to succeed on their sexual harassment hostile work environment claims, Davis and Wilson each had to establish seven elements: (1) she was subjected to sexual harassment; (2) the conduct was unwelcome; (3) the conduct occurred because she was female; (4) the conduct was sufficiently severe or pervasive that a reasonable person in her position would find her work environment to be hostile or abusive; (5) at the time the conduct occurred, she believed that the conduct made her work environment hostile or abusive; (6) Packer knew or should have known about the conduct; and (7) Packer did not take reasonable steps to correct the situation and prevent harassment from recurring. (Jury Instructions, Dkt. No. 197; *see* Seventh Circuit Pattern Instruction 3.04 (citing *Kriescher v. Fox Hills Golf Resort and Conf. Ctr. FHR, Inc.*, 384 F.3d 912, 915 (7th Cir. 2004); *Rizzo v. Sheahan*, 266 F.3d 705, 711–12 (7th Cir. 2001); *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 806–07 (7th Cir. 2000); *Pryor v. Seyfarth, Shaw, Fairweather & Geraldson*, 212 F.3d 976 (7th Cir. 2000)).)

## A. Plaintiff Davis

Packer contends that Davis failed to present sufficient evidence to support her hostile work environment claim for several reasons. First, Packer argues that the evidence of alleged harassment against Davis within the statutory time period[1] was not sufficiently severe or pervasive such that a reasonable person in her position would find her work environment to be hostile. Packer also argues that the evidence showed that the subjective requirement—that is, that Davis believed that the challenged conduct made her work environment hostile—was not met because Davis's own conduct was inconsistent with feeling sexually harassed. For example, Packer presented evidence that it contends established that Davis engaged in inappropriate behavior herself, including having an extra-marital affair with another Packer employee and dressing provocatively at work. Packer further contends that Davis failed to prove that the alleged conduct by Packer employees was directed at her because of her sex, as much of the conduct about which she complained was not directed specifically to her and both women and men at Packer were subjected to the same work environment. Packer also claims that Davis failed to prove that Packer knew or should have known about the harassing conduct and failed to take reasonable steps to prevent it because the evidence showed that, upon receipt of Davis's EEOC charge, Packer retained outside counsel and required the employee behind many of Davis's complaints, Packer Chief Technical Officer Ed Caulfield, to go to harassment training. Finally, Packer argues that the jury's award of compensatory damages was improper because Davis only sought such damages for emotional distress and she failed to put forth any evidence to support her claim.

---

[1] Under 42 U.S.C. § 2000e-5(e), as a prerequisite to bringing a lawsuit, an individual must file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice about which he or she complains. Davis filed her EEOC charge on January 25, 2010.

The Court addresses each argument in turn. First, it was not unreasonable for the jury to find that the totality of the evidence established that Davis worked in an objectively hostile work environment. *See, e.g.*, *Boss v. Castro*, 816 F.3d 910, 920 (7th Cir. 2016) (indicating that "[d]eciding whether a work environment is hostile" requires a "totality of the circumstances approach," which includes "consideration of factors like the frequency of improper conduct, its severity, whether its physically threatening or humiliating . . . and whether it unreasonably interferes with the employee's work performance"). For example, Davis testified that, within the statutory period, she heard Caulfield and another co-worker, Scott Erdman, say "cunt" a "fair amount" throughout her tenure (R. 1018–20); that Caulfield used the terms "bitch" and "stupid bitch" to refer to women (R. 1022); that Caulfield told her she should be at home, barefoot and pregnant (R. 1054); that Caulfield called her an "overpaid bitch" (R. 1055); that Caulfield suggested to her that Packer should cut salaries in half for all administrative assistants, who were all female, because most of them had men to support them (R. 1013, 1058–59); and that she heard pornography sounds coming from the offices of multiple male colleagues, including Tage Tarlson, Aaron Jones, and John McKinney. (R. 1044.)

In addition, the jury was entitled to consider evidence of conduct outside the statutory period as well as conduct directed at others in determining whether a hostile work environment existed. *See, e.g., National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) ("It does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for purposes of determining liability."); *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1144 (7th Cir.

---

The statutory period is thus the 300 days preceding Davis's filing of her charge: March 25, 2009 to January 25, 2010.

1997) (evidence of harassment directed at employees other than the plaintiff is relevant in demonstrating the existence of a hostile work environment). Outside the statutory period, Davis testified that, among other incidents, Erdman shared nude pictures of a young woman at the firm with his colleagues (R. 1042); Erdman commented that an administrative assistant's "pussy was too stretched" (R. 1043); Jones occasionally placed a rubber chicken on his office door handle and when asked why would explain that sometimes he had to "choke the chicken" and would simulate humping his office door (R. 1043); Caulfield called Davis a "sexually dangerous woman" and a "sexual predator" to his staff members (R. 1049); Caulfield suggested that colleague Kim Strathman was going to "grudge fuck" her ex-husband (R. 1024, 1040); Caulfield discussed "camel toe" with other employees and sought out pictures of women with camel toe (R. 1066–67); Caulfield sent pornographic material to female colleagues while they were working (R. 1068); and Jones responded to the sexual harassment training that Davis implemented by commenting that "we don't report [sexual harassment]. We grade it." (R. 1051.)

There was also sufficient evidence for the jury to find that Davis viewed her work environment as hostile. For example, Davis reported the majority of the incidents to personnel on the executive committee and no action was taken. (R. 1042, 1043, 1044, 1047–48, 1055, 1066–67, 1069.) Davis testified that she was "disgusted," "saddened," and "angry" that she had to remind Packer leadership that they could not target female leadership for layoffs. (R. 1015.) She testified that she believes "cunt" is the most offensive word in the English language, and that hearing the word regularly while at work made her feel physically "sick;" "dirty, degraded, and worthless;" and "very distracted" and "less inspired" to work. (R. 1016, 1018, 1020.) When Caulfield told her that her "only place was to be home barefoot and pregnant," it made her feel "horrible" and

"hurt." (R. 1054.) Finally, she was "upset" when she organized a sexual harassment training for Packer employees that was not fully attended or taken seriously. (R. 1072.)

The jury was also entitled to find that the conduct was directed at Davis because she was female. Davis testified about several incidents that the jury could have found were directed specifically at Davis because of her sex, for example, testimony that Caulfield told her she should be at home, barefoot and pregnant (R. 1054), and that he called her "an overpaid bitch," a "sexually dangerous woman," and a "sexual predator" to his staff members. (R. 1049, 1055.) *See, e.g.*, *Passananti v. Cook Cty.*, 689 F.3d 655, 659 (7th Cir. 2012) ("The jury could reasonably treat the frequent and hostile use of the word 'bitch' to be a gender-based epithet that contributed to a sexually hostile work environment."). Moreover, the fact that male and female employees were equally subjected to the environment at Packer—including the regular use of "cunt" and "bitch," sounds of pornography emanating from male employees' offices, and sexualized conversation— does not preclude a finding that the conduct occurred because the plaintiff was female. A work environment equally applicable to male and female employees but particularly degrading to women may meet the "based on sex" requirement of the hostile work environment framework, even where the conduct is not directed at a particular female plaintiff because "[s]uch workplace disparagement of women . . . stands as a serious impediment to any woman's efforts to deal professionally with her male colleagues." *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) (holding the "based on sex" requirement was met where employees were subjected to the same work environment regardless of gender because "the depiction of women in the offensive jokes and graphics . . . was uniformly sexually demeaning and communicated the message that women as a group were available for sexual exploitation by men"); *see also Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 811 (11th Cir. 2010) (explaining that "words or conduct with

sexual content that disparately expose members of one sex to disadvantageous terms or conditions of employment also may support a claim under Title VII" and that "[e]vidence that co-workers aimed their insults at a protected group may give rise to the inference of an intent to discriminate on the basis of sex, even when those insults are not directed at the individual employee"); *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 332 (4th Cir. 2003) (holding that "[a] reasonable jury could find that much of the sex-laden and sexist talk and conduct in the [work environment] was aimed at [plaintiff] because of her sex" even though the conduct was not directed at plaintiff and was equally viewable by male employees because the conduct "was particularly offensive to women"); *Harris v. Mayor and City Council*, 429 Fed. Appx. 195, 198, 201 (4th Cir. 2010) (display of "provocative pictures" of women throughout the work environment "sexualized [plaintiff's] work place and satisfied the 'because of' gender requirement").

As to Packer's argument that the evidence did not establish that Packer was negligent, the jury heard evidence that Davis routinely reported conduct to Packer's executive leadership— including Executive Vice President of Finance Charlotte Sartain, Chief Executive Officer Mike Koehler, and Chairman of the Board Kenneth Packer—and nothing was done. (R. 1021–22, 1037, 1041–42). Packer's argument that it took reasonable steps in response to the complaints focuses only on the company's response once it received Davis's EEOC complaint. But evidence at trial suggested that Packer was aware of the alleged conduct before the EEOC complaint and did nothing, and the jury was entitled to credit that evidence. *See, e.g.*, *May v. Chrysler Grp., LLC*, 716 F.3d 963, 972 (7th Cir. 2013) ("[T]he jury was presented with more than enough evidence to conclude that [defendant ] had not done enough. [Defendant], of course, characterizes its efforts differently . . . . But the jury certainly did not have to believe that [defendant's] efforts . . . were

'adequate' or, even if it thought [the] efforts were adequate, that they started 'promptly' enough for [defendant] to avoid liability.").

Finally, the record supports the jury's award of compensatory damages for emotional distress.[2] A court "must accord substantial deference to a jury's determination of compensatory damages." *Carter v. Chicago Transit Auth.*, No. 99 C 7738, 2001 WL 1035712, *8 (N.D. Ill. Sept. 7, 2001) (citing *Ramsey v. American Air Filter Col, Inc.*, 772 F.2d 1303, 1313 (7th Cir. 1985)). A court may find that there is not enough evidence to support a jury's damages award "[o]nly if [it is] convinced, after looking at all of the evidence in the record, that there was not enough to support the jury's verdict." *Smart Marketing Grp., Inc. v. Publications Int'l Ltd.*, 624 F.3d 824, 829 (7th Cir. 2010). Further, in analyzing an award for compensatory damages, "it is important to bear in mind that our legal system confers on juries the function of placing a value on pain and suffering, both emotional and physical. Judges do not inherently possess more wisdom than jurors in performing this function . . . ." *Deloughery v. City of Chicago*, No. 02 C 2722, 2004 WL 1125897, at *3 (N.D. Ill. May 20, 2004). In reviewing a compensatory damages award, a court considers three factors: "whether the award is 'monstrously excessive'; whether there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas; and whether the award is roughly comparable to awards made in similar cases." *U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1285 (7th Cir. 1995). The Supreme Court has indicated that a compensable injury in a hostile

---

[2] Davis and Wilson Plaintiffs argue that the proper vehicle for challenging a jury's damages award is not a Rule 50(b) motion for judgment as a matter of law. Specifically, they contend that because Packer did not challenge the jury's verdict as excessive in its pre-verdict Rule 50(a) motion, and thus the issue was not preserved for its Rule 50(b) motion post-verdict. This is incorrect. Packer argued in its Rule 50(a) motion that Davis had not put forward evidence to support a claim for compensatory damages (Dkt. No. 237) and thus preserved its argument for the present a Rule 50(b) motion. *See, e.g., Smart Marketing Grp., Inc. v. Publications Int'l Ltd.*, 624 F.3d 824, 829, 832 (7th Cir. 2010).

work environment claim need not rise to the level of affecting the psychological well-being of the victim, but there must be some proof of mental distress. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993).

Regarding the conduct that occurred within the statutory time period, Davis testified that she was "disgusted," "saddened," and "angry" that she had to remind Packer leadership that they could not target female leadership for layoffs. (R. 1015.) She testified that she believes "cunt" is the most offensive word in the English language, and that hearing it regularly at work made her feel physically "sick;" "dirty, degraded, and worthless;" and "very distracted" and "less inspired" to work. (R. 1016. 1018, 1020.) When Caulfield told her that her "only place was to be home barefoot and pregnant," it made her feel "horrible" and "hurt" both because she was a woman and because Caulfield was aware that she had to undergo a procedure that left her unable to have children. (R. 1054.) She further testified that she was "upset" when she organized a sexual harassment training that was not fully attended and that was not taken seriously. (R. 1072.). Given the evidentiary record, there is a rational connection between the award and the evidence. Further, given that Davis's compensatory damages were already reduced post-trial from $150,000 to $50,000 pursuant to Title VII's damages cap, the Court declines to find that the reduced award was monstrously excessive such that it should be further reduced. Finally, the award is roughly comparable to awards made in similar cases. *See, e.g.*, *David v. Caterpillar, Inc.*, 324 F.3d 851, 364 (7th Cir. 2003) (in Title VII case, finding $50,000 in compensatory damages appropriate for depression, anxiety, and stress); *Fulmore v. M&M Transp. Servs., Inc.*, No. 11-cv-00389-TSP, 2014 WL 1691340, at *14–15 (S.D. Ind. Apr. 29, 2014) (in a Title VII case, finding $50,000 in compensatory damages appropriate for emotional injury where the plaintiff testified to feeling uncomfortable, angry, embarrassed, and sad).

### B.  Plaintiff Wilson

Packer also raises several arguments why Wilson failed to present sufficient evidence to support her hostile work environment claim. First, Packer contends that the evidence established that a reasonable person in Wilson's position would not have found the work environment to be hostile because Wilson did not know for sure that Packer employee John McKinney was watching pornography and masturbating in his office. Similarly, Packer claims that the evidence showed that Wilson did not believe that the conduct made her work environment hostile because she was able to perform her job with high reviews and enjoyed working at Packer. Next, Packer argues that Wilson failed to prove that the conduct was directed at her because of her sex because women and men at Packer were subjected to the same environment. Packer also contends that the evidence failed to establish that Packer knew or should have known about the conduct and failed to take reasonable steps because when Packer received Wilson's EEOC charge, it retained outside counsel and conducted an investigation, took action to move McKinney's office, issued him a warning letter, required him to attend counseling, and monitored his activities. Finally, Packer argues that the jury's compensatory damages award for Wilson's emotional distress was improper because the evidence showed that Wilson was laughing in the videos that she recorded of McKinney's conduct and that she was treated for emotional issues prior to ever viewing McKinney in his office.

Again, the Court addresses each argument in turn. First, the evidence supports the jury's finding that a reasonable person in Wilson's position would have found her work environment to be hostile. While Packer argues that the evidence showed that McKinney was not actually watching pornography or masturbating, the jury was entitled to weigh the conflicting evidence, make credibility determinations, and find that Wilson's claim was supported. For example,

Wilson testified that she had "no doubt that he was actually masturbating" and that she saw him masturbating from two to ten times nearly every day. (R. 679, 854.) Moreover, a male employee who had an office near McKinney also testified that he heard McKinney watching pornography, that he was disturbed by it, and that it was happening so much that he could not do his work. (R. 680, 711.) Another male employee also testified that he heard and saw what he thought was McKinney watching pornography and masturbating and he was offended by what he saw. (R. 446, 559.) Additionally, the jury was able to view videos and photographs of what Wilson observed and make a determination for themselves.

The record also supports the jury's finding that Wilson believed that the conduct made her work environment hostile. For example, she testified that she was offended by what she heard and saw and would sometimes leave her desk to go to the filing room to get away from it. (R. 678–79.) She also testified that she reported the issue to Packer leadership, confronted McKinney and asked him to stop, and ultimately filed a charge of discrimination with the EEOC. (R. 705–07, 710–11, 722.)

In addition, as discussed with respect to Davis, the jury was entitled to find that the alleged conduct occurred because Wilson was female. That male and female employees were equally subject to viewing McKinney's conduct and hearing the sounds of pornography emanating from his office does not preclude the jury from making such a finding. This is particularly so given that the jury heard evidence that the audio from the pornography—which infiltrated Wilson's work space—regularly included gender-based language such as "who's your bitch?" (R. 676, 679, 708, 682.) *See Passananti,* 689 F.3d at 664 ("The jury could reasonably treat the frequent and hostile use of the word 'bitch' to be a gender-based epithet that contributed to a sexually hostile work environment.") Put another away, the jury was entitled to find that a male co-worker masturbating

to pornography that included anti-female language was particularly degrading to women and therefore met the "based on sex" requirement of the hostile work environment framework; "[s]uch workplace disparagement of women . . . stands as a serious impediment to any woman's efforts to deal professionally with her male colleagues." *Petrosino*, 385 F.3d at 223; *Reeves*, 594 F.3d at 811; *Ocheltree*, 335 F.3d at 332; *Harris*, 429 Fed. Appx. at 198, 201.

The record also supports the jury's finding that Packer knew or should have known about the conduct and yet did not take reasonable steps to correct the situation or prevent its recurrence. While Packer's argument that it took reasonable steps focuses on its conduct after it received Wilson's EEOC complaint, the record supports a finding that Wilson and others reported the pornography issues to executives at Packer starting over six months before the EEOC complaint and Packer did not take any steps to address the situation. (R. 377, 389, 390–91, 394–95, 406, 710–11, 1045–6.). *See, e.g.*, *May*, 716 F.3d at 972 ("[T]he jury was presented with more than enough evidence to conclude that [defendant ] had not done enough. [Defendant], of course, characterizes its efforts differently . . . . But the jury certainly did not have to believe that [defendant's] efforts . . . were 'adequate' or, even if it thought [the] efforts were adequate, that they started 'promptly' enough for [defendant] to avoid liability.").

Finally, the record supports the jury's award of compensatory damages for emotional distress. Wilson testified that when she first heard the pornography and saw McKinney masturbating, her colleague had to take her into a nearby office and make sure she was okay and tell her to calm down. (R. 677.) The word "bitch" coming from the pornography offended her. (R. 678.) Sometimes she would leave hear desk and go into the filing room to get away from what she was hearing and seeing. (R. 679.) When she went to her direct supervisor, who was also on Packer's executive committee, to discuss what was happening and ask him to take action, she was

"hurt" and "angry" when he did nothing. (R. 681, 705.) Wilson further testified that she "had

some anxiety" leading up to approaching McKinney directly about his conduct and asking him to

stop, and she was worried about losing her job or "something go[ing] wrong. (R. 705.) After she

talked to him, she was "embarrassed" and avoided her desk because she "didn't want him to look

at me. I didn't want him slamming things. I didn't know if he was going to do a temper—I didn't

know." (R. 707, 708.) She also testified that she thought it was "very disgusting to know

somebody intimately, when you've never been with them intimately." (R. 708.) Wilson further

testified that after she reported to the EEOC and had to go back to work she had anxiety, felt

nervous, and was not sleeping. (R. 725.) She again worried about McKinney's "temper tantrums .

. . because if I'm sitting in that space and it gets out of control, what about that?" (R. 725.) She

had to tell her daughter and mother what happened because she supported both of them and

worried about losing her job, and this made her feel "dirty, [] ashamed . . . I had to go to this man,

[had] to tell my daughter this stuff, [had ] to tell my mom this stuff." (R. 726–27.) She further

testified that she spoke to her therapist about her distress, that she was having panic attacks at

night, and that the therapist gave her sleeping pills. (R. 727–28.) Given the evidentiary record,

there is a rational connection between the award and the evidence. The jury was entitled to find

that Wilson's emotional issues stemmed from her experience at Packer rather than other factors

like financial and relationship issues. Further, given that Wilson's compensatory damages have

already been reduced post-trial from $300,000 to $50,000 pursuant to Title VII's damages cap, the

Court declines to find that the reduced award was monstrously excessive such that it should be

further reduced. Finally, as discussed in connection with the compensatory damages award to

Davis, the award to Wilson is roughly comparable to awards made in similar cases.

*     *     *

In sum, because the Court finds that the jury had a legally sufficient evidentiary basis to find for both Davis and Wilson on their hostile work environment claims, Packer's motions for judgment as a matter of law are denied.

## II.     Motion for a New Trial

In the alternative to judgment as a matter of law, Packer also moves for a new trial pursuant to Federal Rule of Civil Procedure 59(e). A federal court should grant a new trial under Rule 59(e) only "if the verdict is against the clear weight of the evidence, the damages are excessive or the trial was unfair to the moving party." *Miskis v. Howard*, 106 F.3d 754, 757 (7th Cir. 1997). Packer seeks a new trial on all three grounds. The decision whether to grant a new trial lies within the sound discretion of the trial court. *Id.*

### A.     Manifest Weight of the Evidence

Packer first argues that it is entitled to a new trial because the evidence shows that no rational jury could have rendered verdicts in Davis's and Wilson's favors on their hostile work environment claims. In support, Packer refers the Court to its arguments set forth in its motions for judgment as a matter of law.

A court may set aside a verdict as against the manifest weight of the evidence "only if no rational jury could have rendered the verdict. The . . . court must view the evidence in the light most favorable to the prevailing party, leaving issues of credibility and weight of the evidence to the jury." *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 444–45 (7th Cir. 2009). When ruling on a motion to grant a new trial based on sufficiency of the evidence, a court must be "particularly careful in employment discrimination cases to avoid supplanting [its] view of the credibility of the evidence for that of . . . the jury." *Riemer v. Ill. Dep't of Transp.*, 148 F.3d 800, 806 (7th Cir. 1998). Put another way, the court's analysis is "limited to determining whether the

evidence presented, combined with all reasonable inferences that may be drawn from it, is sufficient to support the verdict when viewed in the light most favorable to the plaintiff." *Hutchinson v. Amateur Electronic Supply, Inc.*, 42 F.3d 1037, 1042 (7th Cir. 1994) (internal quotations and citation omitted).

Given this standard, Packer is not entitled to a new trial on this basis. As discussed in detail in relation to Packer's motions for judgment as a matter of law, a rational jury could have rendered verdicts in Davis's and Wilson's favors on their hostile work environment claims. The Court thus denies Packer's motion for a new trial on this ground.

### B. Evidentiary Errors

Packer next argues that certain evidentiary rulings and jury instructions were erroneous and prejudicial, warranting a new trial. When a Rule 59 motion alleges judicial errors in admitting or rejecting evidence, the Court considers the motion in conjunction with Federal Rule of Civil Procedure 61. *See Moore v. Metro Water Reclamation Dist. of Greater Chicago*, No. 02 C 4040, 2005 WL 2007291, at *4 (N.D. Ill. Aug. 12, 2005). Rule 61 provides that "[u]nless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment." Fed. R. Civ. P. 61; *see also Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 621 (7th Cir. 2003) (error is harmless unless it had a "substantial and injurious effect or influence on the jury's verdict"); *McDonough Power Equip., Inc. v Greenwood*, 464 U.S. 548, 553 (1984) ("[A party] is entitled to a fair trial, but not a perfect one.") The Court will consider each alleged error identified by Packer in turn.

**1.      Denial of Packer's Motion to Sever**

Packer contends that the Court's denial of Packer's motion to sever the three Plaintiffs' claims for trial was in error because the claims had no similarities other than that Plaintiffs all worked in the same office. Specifically, Plaintiffs were hired at different times, employed in different positions, and allege misconduct by different individuals over a period of more than ten years.

Packer raised this argument in a pre-trial motion to sever and the Court issued a written ruling denying the motion. (Dkt. No. 140.) As discussed in detail in that opinion, Federal Rule of Civil Procedure 20 allows plaintiffs to join in one action if they assert claims "arising out of the same transaction, occurrence or series of transactions or occurrences" and "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a). "Federal policy favors joinder, as the purpose of Rule 20 is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Smith v. Ne. Ill. Univ.*, No. 98 C 3555, 2002 WL 377725, at *1 (N.D. Ill. Feb. 28, 2002) (internal quotation omitted). In determining whether discrimination claims arise out of the "same transaction, occurrence, or series of transactions or occurrences," courts consider several factors, including: the time period of the alleged acts; whether the alleged acts are related; whether there were differing types of adverse employment actions; whether more than one type of discrimination is alleged; whether the same supervisors were involved; whether employees were at the same geographical locations; and whether a company-wide policy is alleged. *Id.* at *2.

Here, the evidence put forward by each of the three Plaintiffs painted a picture of a sexually-charged workplace permeated with harassment and hostility toward women during overlapping time periods reaching back to 2002 and continuing to early 2010. Moreover,

Plaintiffs all testified about a company-wide practice of condoning the workplace culture and failing to respond to complaints. Specifically, all three Plaintiffs testified regarding reporting incidents of discrimination to the same group of Packer executives—including Sartain, Dr. Packer, Koehler, and Moore—and having their complaints ignored by these executives. Finally, while none of the Plaintiffs succeeded on his or her retaliation claim, all three Plaintiffs claimed that they were ultimately terminated in retaliation for reporting the gender discrimination, sexual harassment, or a hostile work environment. The Court therefore held that there were questions of law and fact common to all three Plaintiffs and that consideration of the expense, inconvenience, time, and overlap of evidence and witnesses that would result from bifurcating the trials outweighed any risk of jury confusion or prejudice. The Court stands by this ruling and finds that there was no error.

### 2. Evidence of Rio Bravo Incident

Packer next suggests that the Court erred by allowing evidence regarding an event outside the statutory period to support Davis's hostile work environment claim—specifically, testimony that at a Packer holiday party in 2002, Caulfield grabbed Davis's head from behind, pushed it in his lap, and told her to give him a blow job. The Court previously denied Packer's motion *in limine* to exclude this evidence, reasoning that even though the incident was not within the statutory period, it may provide useful background information and context for Davis's non-time-barred sexual harassment claims. (Dkt. No. 174.) As the Court noted in that order and above in its discussion of Packer's motions for judgment as a matter of law, a plaintiff may introduce evidence of an act outside the statutory time period for the purposes of establishing a hostile work environment if the act contributed to the claim that occurred within the statutory period. *See*, *e.g.*, *Morgan*, 536 U.S. at 117 ("Provided that an act contributing to the claim occurs within the filing

period, the entire time period of the hostile environment may be considered by a court for purposes of determining liability."); *Moore,* 2004 WL 2958769, at *3 ("[A] reasonable jury could conclude that the conduct during the limitations period merely extended the same hostile work environment that began in the pre-limitations period.") (internal quotations omitted).

Packer further argues—citing only case law from other circuits—that it is well-established that conduct away from the workplace or outside business hours is not relevant to a hostile work environment claim. Packer never raised this issue in its motion *in limine* seeking to bar testimony on this incident (*see* Dkt. No. 143 at 7), and the argument is therefore waived. *See Stephens v. Miller*, 13 F.3d 998, 1008 n. 5 (7th Cir. 1994) ("An evidentiary rationale not raised before the trial judge at the time of ruling is waived."); *Niebur v. Town of Cicero*, 212 F. Supp.2d 790, 803 (N.D. Ill. 2002) (objection waived unless specific grounds for objection are made at the time of ruling).

For these reasons, the Court stands by its previous ruling and finds no error in admitting the evidence.

### 3.    Time-Barred Remarks about Other Employees

Packer asserts that the Court erred by allowing testimony from Davis about comments made by Caulfield and other male colleagues about their female assistants—including testimony that she heard that Caulfield called his assistant a "cunt"—despite the fact that Davis was not present, and the comments were not directed to her, and were outside the limitations period. The Court previously denied Packer's motion *in limine* seeking to exclude this evidence, reasoning that evidence of sexually-explicit remarks made to other employees is relevant in demonstrating the existence of a hostile work environment. (Dkt. No. 174 at 6.) *See, e.g.*, *Gleason*, 118 F.3d at 1144 (7th Cir. 1997) (holding that incidents directed at others not the plaintiff are relevant in demonstrating the existence of a hostile work environment); *Molnar*, 229 F.3d at 603 (7th Cir.

2000) (holding that evidence of sexual harassment of others was relevant to show the likelihood that plaintiff was harassed). The Court stands by its previous ruling and finds no error in admitting the evidence.

### 4. Webb's Hostile Work Environment Claim

Packer also contends that the Court erred by excluding evidence that Webb, a male employee, initially brought a hostile work environment claim that he voluntarily dismissed prior to trial. Packer argues that this evidence was relevant to show that the hostile work environment alleged by Davis and Wilson was not gender-based and thus not actionable.

During trial, the Court sustained Plaintiffs' counsel's objection to testimony that Webb filed a hostile work environment claim based on sex discrimination on the basis that it was irrelevant, could confuse the jury, and there are many reasons a plaintiff may voluntarily withdraw claims. (R. 627.) In response to defense counsel's argument that it was relevant for the jury to hear that a male made the same hostile work environment claim, the Court indicated that it would allow defense counsel to question Webb on whether he believed he was discriminated against on the basis of sex without raising the fact of his dismissed claim. (R.627–28.) Thus, contrary to Packer's suggestions, the jury heard testimony from Webb indicating that he was subjected to the same environment as Wilson and Davis. The jury could have determined that the hostile work environments alleged by Wilson and Davis were not based on their gender, since male and female employees were subjected to the same environment. That the jury did not so decide was not error.

The Court adheres to its previous ruling that the fact of Webb's voluntarily dismissed hostile work environment claim was irrelevant and potentially confusing, and thus inadmissible. Accordingly, the Court finds that no error occurred.

### 5. Caulfield's "Jurors" Comment

Packer contends that the Court allowed—over Packer's objection—testimony from Davis that Caulfield told her juries were made up of "stupid bitches," and that this evidence was admitted in error because it was prejudicial. The Court heard Packer's objection to the testimony on the record and overruled it then (R. 83–86), and the Court stands by that ruling. Contrary to Packer's suggestion, Davis's testimony was not regarding a comment by Caulfield about juries generally but rather related to a particular instance where Caulfield called Davis a "stupid bitch." Specifically, Davis testified that Caulfield asked her if she was able to get out of jury duty, and when she replied that she had not, he called her a stupid bitch and explained that juries are mostly made up of women "because women are stupid bitches." (*Id.*, R. 1073.) The testimony was therefore relevant to Davis's claim that she was subjected to a hostile work environment in part because Caulfield used the word "bitch" to refer to her and other female employees. (R. 83–86.) Because the relevance of this testimony outweighed any prejudicial effect, the Court finds no error in allowing the testimony.

### 6. Evidence of Alleged Misconduct With No Allegation Plaintiffs Knew of Misconduct During Employment

Packer suggests that it was prejudiced by Plaintiffs' introduction of evidence of alleged misconduct with no showing that Plaintiffs were aware of the conduct while they were employed at Packer. Specifically, Packer points to evidence of an incident when Packer employee Kristin Federline fell down a flight of stairs and an incident involving a Packer employee making female body parts out of metal. With respect to the first incident, on cross examination, Plaintiffs' counsel asked Sartain whether she remembered anything about Federline falling down the stairs. (R. 1822.) The witness replied that she did not, and the questioning moved to a new topic. (*Id.*) Packer did not object to the questioning. (*Id.*)

As to the second incident, Plaintiffs' counsel questioned Sartain on cross examination about Defense Exhibit 22, which included investigative notes from the EEOC regarding Wilson's EEOC complaint. (R. 1802, 1806–07, 1827.) Sartain testified that Packer received the notes from the EEOC and she used the notes to understand what had been alleged about the company. (R. 1807–08.) Plaintiffs' counsel questioned Sartain on a portion of the notes indicating that an employee at Packer suggested that McKinney had shaped 10 to 15 pieces of metal into a female body part, and Sartain testified that she did not investigate that conduct when she received the notes. (R. 1830–32.) In closing argument, Plaintiffs' counsel argued to the jury that, in considering whether they heard evidence constituting a hostile work environment based on gender, to keep in mind that "[y]ou didn't hear about . . . metal objects put together in the form of penises. You heard about them in the form of female genitalia." (R. 2404.) Defense counsel did not object to the cross examination or the closing argument. (R. 1830–32, 2404.)

With respect to both incidents, Packer waived its argument that the Court erred in allowing the testimony because Packer failed to object when the testimony was given—on the grounds asserted here or any other. Regardless, the Court disagrees that the evidence should have been excluded on the grounds that Packer asserts because—as discussed above—evidence of harassment not directed to a plaintiff is relevant to a jury's consideration of whether the evidence was sufficient to show a hostile work environment given the totality of circumstances. The Court therefore finds no error in allowing the testimony or argument.

### 7. Hearsay Statements

Packer asserts that it was error for the Court not to exclude on hearsay grounds: Davis's testimony that she heard Caulfield call other female Packer employees "cunts" or "bitches;" Sartain's testimony that Caulfield used the word "cunt;" and Sartain's testimony that Caulfield

stated that a female employee was going on a vacation with her ex-husband to "grudge fuck him." Contrary to Packer's argument, Packer did not object to Davis's testimony on hearsay or any other grounds. (R. 1018–23.) Packer objected to Sartain's testimony about Caulfield's use of the word "cunt" only on foundation grounds and did not object to the "grudge fuck" testimony at all. (R. 171–72, 178–79.) In any event, these instances were not hearsay because they were not offered for the truth of the matter asserted. Moreover, the Court instructed the jury that the testimony from Sartain was being offered to establish whether Sartain or Packer management was aware of allegations of Caulfield using the word "cunt," and the jury should consider the testimony for that purpose only. (R. 172.)

Packer also argues that it was an error for the Court to allow former Packer employee Edna Davis to testify that Sartain told her that Sartain had a discussion with Caulfield to address his behavior, and he responded "fuck you" and asked "would you rather I say screw you?" (R. 469.) The Court addressed defense counsel's hearsay objection on the record and held that Caulfield and Sartain's statements fell under the hearsay objection for statements of party opponents. (R. 468.) Packer argues that the Court's ruling was erroneous because Caulfield and Sartain were not parties in the case and were not employed by Packer at the time of trial. The Court disagrees.

Federal Rule of Evidence 801(a)(2)(D) excludes from the rule against hearsay statements offered against an opposing party "by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(a)(2)(D). Testimony from Sartain established that she was an executive of Packer and had authority to address sexual harassment related issues.[3] At the time of the conversation between Edna Davis and Sartain and the

---

[3] Sartain also served as Packer's corporate representative at Federal Rule of Civil Procedure 30(b)(6) deposition and at trial.

conversation between Sartain and Caulfield, Sartain was operating in this capacity. Her statement to Edna Davis therefore falls under the hearsay exception. Finally, Caulfield's statement to Sartain was not hearsay within hearsay because it was not offered for the truth of the matter asserted.

Packer also contends that the Court erred by overruling Packer's hearsay objection to Wilson's testimony about former Packer employee Jackie Waters's statement in response to Wilson's description of her sexual harassment claim. Specifically, Wilson testified that after Packer received Wilson's EEOC charge, Sartain called Wilson into her office to meet with Sartain and Waters. (R. 840.) Sartain handed Waters a notepad and instructed her to take notes, and then asked Wilson to explain her EEOC claim. (*Id*.) Wilson testified that when Sartain asked how long the conduct had been occurring and Wilson answered, Waters slammed the notepad down on the desk and said "[i]t's been going on too damn long, Charlotte, and something needs to happen."[4] (R. 841.) The Court overruled Packer's hearsay objection at the time, and later went back to clarify that while the statement did not qualify as a present-sense impression under Federal Rule of Evidence 803(1) (as Plaintiffs' counsel argued), it did qualify as an excited utterance under Federal Rule of Evidence 803(2) and that, in any event, the statement was not hearsay because it went to the issues of the notice to and the effect on the listener. (R. 889–90.) Packer now cites a Ninth Circuit case to argue that the Court's ruling was in error because when a statement is offered under the excited utterance exception, a court must make a preliminary factual determination that the declarant was so excited or distraught that she did not have the opportunity to reflect on what she was saying. *See United States v. McLennan*, 563 F.2d 943, 948 (9th Cir. 1977).

---

[4] Waters testified at trial, as a witness for Packer, that she did not remember the meeting about Wilson's allegations that included Waters, Wilson, and Sartain. (R. 1433, 1437.)

The Court is not persuaded that the Court's ruling was error. Most critically, as the Court noted on the record, the out-of-court statement appears to have been offered not for the truth of the matter asserted, but rather for its notice to and effect on Sartain[5] and to show Waters's reaction to Wilson's allegations. (R. 889.) Moreover, with respect to the excited utterance exception, the Ninth Circuit in *McLennan* did not hold that the trial court committed error by failing to make a preliminary factual determination supporting an excited utterance exception explicitly on the record. *McLennan*, 563 F.2d at 948. Rather, the *McLennan* court simply noted that the trial judge had not made such a determination on the record, and that the trial record was not sufficient for the Ninth Circuit to make such a determination. *Id.* Further, the Seventh Circuit has made clear that "[c]ourts need not make a specific finding that the declarant was entirely incapable of deliberative thought at the time. All that the exception requires is that the statement be made contemporaneously with the excitement resulting from the event." *Martinez v. McCaughtry*, 951 F.2d 130, 135 (7th Cir. 1991). As was clear from the testimony, Waters' statement was made contemporaneously with her discovery of how long the conduct that Wilson alleged had been occurring. (R. 840–41.) Wilson's testimony about Waters's reaction, including her slamming of the notebook, made clear that Waters made her statement under the stress of the excitement caused by this discovery. *See, e.g.*, *U.S. v. Zuniga*, 767 F.3d 712, 716 (7th Cir. 2014) ("For an out of court statement to qualify under the excited utterance exception: (1) a startling event must have occurred; (2) the declarant must make the statement under the stress of the excitement caused by the startling event; and (3) the declarant's statement relates to the startling event."). For these reasons, the Court finds that there was no error in allowing the testimony.

---

[5] As discussed above, evidence established that Sartain was a Packer executive with authority to address sexual harassment complaints. In addition, Sartain also served as Packer's corporate representative at the Rule 30(b)(6) deposition and at trial.

### 8.    Reputation Evidence

Packer argues that the Court improperly allowed reputation evidence, particularly evidence that Sartain characterized Caulfield as a "male chauvinist," (R. 169), in violation of Federal Rule of Evidence 404. Specifically, during direct examination of Sartain, Plaintiffs' counsel asked Sartain about her deposition testimony where she was asked if Caulfield was a "male chauvinist" and she said that he was. (R. 169.) Packers' counsel did not object to the questioning on Rule 404 grounds[6] (*Id.*) Packer thus waived its instant argument. *See Stephens*, 13 F.3d at 1008 n.5. In any event, given the context of Plaintiffs' counsel's questions, in context it appears that the testimony was elicited not to prove that on a particular occasion Caulfield acted in accordance with this trait, but rather to establish Sartain's knowledge of the hostile work environment in part created by Caulfield. Further, when asked at trial, Sartain denied that she meant to suggest that Caulfield treated women in a particular way, but instead explained that she meant that, "Ed was a very strong, dynamic man. He knew his engineering, if you will." (R. 169.) When asked what "male chauvinist" meant to her, she replied that she would consider Plaintiffs' counsel or Defendant's counsel a male chauvinist because "You're very good at what you do, you understand what you do, you take charge. . . . [Y]ou're dynamic in what you do. Good at what you do." (R. 169.) For these reasons, the Court finds that there was no error or prejudice in admitting the testimony.

### 9.    Jury Instructions

Packer contends that the Court's inclusion of certain jury instructions and its refusal to include others was prejudicial error. A court considering a challenge to jury instructions reviews the instructions as a whole to determine if they adequately informed the jury of the applicable law.

---

[6] Packer filed a motion *in limine* to exclude this testimony on hearsay grounds, which the Court denied. (Dkt. No. 174 at 9–10.)

*Phoenix Bond & Indem. Co. v. Bridge*, 911 F. Supp. 2d 661, 677 (N.D. Ill. 2012). The court examines whether the instructions, taken as a whole, misstated or failed to fully state the law; if so, the court must then determine whether the instructions confused or misled the jury, thereby causing prejudice. *Id.* (citing *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 876 (7th Cir. 2011); *Van Bumble v. Wal-Mart Stores, Inc.*, 407 F.3d 823, 825–26 (7th Cir. 2005)).

### a.      Testimony of Witnesses

Packer asserts that the addition to Seventh Circuit Pattern Instruction 1.13 (Testimony of Witnesses) of "whether a witness spoke to others about their testimony before the witness testified" to the list of factors that jurors may consider in evaluating testimony was improper and prejudicial. The Court heard Packer's objection to the addition during the parties' jury instruction conference and provided its reasons for including the instruction. (R. 2172–73.) As noted on the record at that time, the instruction was helpful for the jury because defense witness Waters had testified that she traveled to Chicago for the trial with two other Packer witnesses in a carpool arranged by defense counsel, and the witnesses discussed what their testifying "roles" were. (R. 1436.) As the Court indicated, the instruction was not prejudicial to Packer because it did not suggest to the jurors one way or the other about the propriety of witnesses speaking to each other about their testimony. (R. 273.) The Court therefore stands by its ruling that this addition was proper and, at the very least, was not a misstatement of the law.

### b.      Hostile Work Environment: Harassment by Co-Employees

Packer suggests that the modification to Seventh Circuit Pattern Instruction 3.04 (Harassment by Co-Employees) to include the statement that "[a] hostile work environment may be manifested through behavior that is not overtly sexual in nature but reflects anti-female animus" was improper because it was not a complete or accurate statement of the law. The Court

considered and responded to Packer's objection on the record, and provided its reasoning for including the additional instruction. (R. 2353–56.) The Court adheres to its previous ruling—specifically, this instruction is an accurate statement of Seventh Circuit precedent and reflects the fact that there could be confusion based on the term "sexual harassment" as to whether the harassment needs to be based on sexual desire or conduct as opposed to gender. (R. 2353.) *See, e.g.*, *Passananti*, 689 F.3d at 664; *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 788 (7th Cir. 2007).

### c. Punitive Damages

Packer argues that the modification to Seventh Circuit Pattern Instruction 3.13 (Punitive Damages) to include the statement that the jury could consider "the effect that an award of punitive damages may have on warning others not to engage in conduct similar to Defendant" was not an accurate statement of the law and was prejudicial. The Court heard Packer's objection and responded to it on the record at the parties' jury instruction conference. (R. 2222–25.) Specifically, the Court explained that the pattern instruction does in fact state that the purpose of punitive damages is to "serve as an example or warning to defendant and others not to engage in similar conduct in the future." (R. 2232; *see* Seventh Circuit Pattern Instruction 3.13.) The Court therefore finds that inclusion of this instruction was proper.

### d. Packer's Proposed Instructions

Packer next contends that the Court erred by declining to give various additional instructions proposed by Packer relating to requirements for finding a hostile work environment, and that this error misled the jury. As the Court discussed at length on the record, Defendants' proposed instructions were unnecessary and duplicative of the comprehensive pattern instruction. (R. 2205, 2234–36, 2242–48.) The Court was not required to accept as a jury instruction every

favorable sound-bite that Packer identified in its combing through of case law where work environments were found to be not sufficiently hostile. That Packer's offered instructions may have been correct statements taken from those cases did not mandate that the instructions be given, as "'a judge need not deliver instructions describing all valid legal principles.'" *E.E.O.C. v. AutoZone, Inc.*, 809 F.3d 916, 923 (7th Cir. 2016) (quoting *Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1994)).The Court therefore finds that declining to include these additional instructions was not error.

### 10.    Packer's Special Verdict Form

Packer also argues that the Court erred by declining to use the special verdict form submitted by Packer because the case involved multiple claims or complex issues and because special verdicts are commonly used in hostile work environment cases. The Court considered and responded to Packer's request for a special verdict form on the record and discussed why a special verdict form was unnecessary. (R. 2249–51.) The Court had broad discretion under Federal Rule of Civil Procedure 49 to decide whether to utilize a special verdict form and properly determined that such a form was unnecessary in this case. The Court adheres to its previous ruling to reject the special verdict form. As discussed on the record, the law disfavors special verdict forms, and anything more granular than asking the jury to give fair and separate treatment to each Plaintiff and each claim tends to invade the province of the jury. (R. 2249–51.)

### 11.    Closing Argument

Packer contends that Plaintiffs' counsel made remarks during closing argument that were unwarranted and clearly injurious, requiring a new trial. Specifically, Packer points to Plaintiffs' counsel's statements that: (1) Wilson had rejected a $150,000 settlement offer from Packer (evidence of which had not been presented at trial); and (2) Packer had refused to produce

financial records. (R. 2458–59, 2465–66.) Packer objected to counsel's statement regarding the settlement offer at the time, and the Court reminded the jury that it should consider only the evidence presented through witness testimony and exhibits offered into evidence; that the arguments of the lawyers were not evidence; and that if there was something in the lawyer's arguments that differed from the evidence, the jury should pay attention to the evidence that was presented. (R. 2458–59.) In response to defense counsel's objection to the statement regarding production of financial information, the Court gave a clarifying instruction (agreed to by defense counsel) that as part of the stipulation entered into by the parties regarding the financial condition of Packer, the parties agreed to limit the amount of testimony and evidence the jury would have to hear on financial issues. (R. 2465–66.) Thus, the Court finds that these statements in conjunction with the clarifying instructions were not so prejudicial as to warrant a new trial.

### 12. Photographs and Videotapes

Packer asserts that the Court improperly allowed Plaintiffs to introduce videos and photographs that Wilson claimed depicted McKinney watching pornography and masturbating in his office. Packer suggests that the admission of these materials was improper because Packer had a policy prohibiting employees to record or photograph other employees without their consent. The Court addressed this argument pre-trial in response to Packer's objections to Plaintiffs' proposed exhibits, and the Court then determined that the photographs and videotapes were relevant and therefore admissible regardless of whether they violated policy. (Dkt. No. 174.) The Court adheres to this ruling.

Packer also argues that the Court should have excluded the videos and photographs because they were taken illegally in violation of the Illinois eavesdropping statute. Packer previously made this argument in a motion *in limine* seeking to exclude the materials, and the

Court addressed the argument in its decision denying the motion. (Dkt. No. 174 at p. 8.) In its instant motion, Packer again fails to point to any authority suggesting that—if the evidence were indeed obtained illegally—the correct remedy in a civil case would be to exclude the evidence. Moreover, as discussed in the Court's initial ruling, there has been no determination that this evidence was actually procured illegally. Packer provides no argument as to why the photos and videos violate the Illinois eavesdropping statute. For example, Packer does not suggest how sounds emanating from pornography and alleged masturbation in a public office qualify as an "oral communication between two or more persons . . . intended to be of a private nature under circumstances reasonably justifying that expectation" as required to qualify as a "private conversation" capable of being subject to eavesdropping under the statute. *See* 720 ILCS 5/14-1(d). The Court therefore adheres to its previous ruling and finds that there was no error in allowing the evidence.

### 13.    Juror's Question

Packer suggests that the Court's response to a question from the jury was in error. Specifically, during deliberation, the jury submitted a question to the Court stating: "Please define 'conduct' as stated in Item 2 and 3 in the hostile work environment [instruction]. Is conduct limited to Bernessa Wilson's direct observations or does it include Packer Engineering's response to her claim?" (R. 2486.) The Court discussed with the parties that items 2 and 3 in the jury instructions were the elements that "the conduct was unwelcome" and "the conduct occurred because plaintiff was female." (R. 2488.) Defense counsel raised the objection that the Court's proposed answer that "conduct" includes the actions that contributed to the alleged hostile work environment could be interpreted to include incidents that were not directed to Wilson and that Wilson did not know about. (R. 2490.) As discussed on the record in response to Packer's

objection and again here, *supra*, the law is clear that the existence of a hostile work environment is determined by looking at the totality of the circumstances, and incidents directed at employees other than a plaintiff are relevant in demonstrating the existence of a hostile work environment. *See, e.g.*, *Gleason*, 118 F.3d at 1144 (holding that incidents directed at others not the plaintiff are relevant in demonstrating the existence of a hostile work environment); *Molnar*, 229 F.3d at 603 (holding that evidence of sexual harassment of others was relevant to show the likelihood that plaintiff was harassed). The Court stands by its previous decision to overrule Packer's objection and therefore finds that no error was committed.

### 14. Cumulative Error

Finally, Packer argues that even if the alleged errors were harmless when taken individually, taken cumulatively the alleged errors were so severe that Packer was deprived of a fair trial. To prevail on an argument that the cumulative effect of alleged evidentiary errors warrants a new trial, the movant must show (1) that multiple errors occurred at trial; and (2) those errors, in the context of the entire trial, "were so severe as to have rendered trial fundamentally unfair." *Christmas v. City of Chicago*, 682 F.3d 632, 643 (7th Cir. 2012). "In conducting this analysis, [courts] examin[e] . . . the entire record, paying particular attention to the nature and number of alleged errors committed; their interrelationship, if any, and their combined effect; how the trial court dealt with the errors, including the efficacy of any remedial measures; and the strength of the prosecution's case." *Id.*

With this standard in mind, and for the reasons discussed above, the Court finds that Packer received a fair trial. The majority of the evidentiary errors alleged by Packer were not, in fact, errors. In any event, any errors were harmless, both when considered individually and

cumulatively. *Young*, 327 F.3d at 621 (error is harmless unless it had a "substantial and injurious effect or influence on the jury's verdict").

For all of these reasons, the Court therefore denies Packer's motion for a new trial on the basis of evidentiary errors.

### C.    Damages

Packers also argues that a new trial is proper because the jury's compensatory damages awards for Davis and Wilson were excessive and bear no relationship to the evidence. The Court addressed this argument at length in connection with Packer's motions for judgment as a matter of law and, for the reasons discussed above, the Court declines Packer's request for a new trial on this basis. Packer further contends that a new trial is proper because the jury's award of punitive damages was improper. However, as Plaintiffs point out in response, the jury's punitive damages award was reduced to zero in connection with the Court's granting of Packer's motion to reduce the jury verdict. The Court therefore finds no controversy to resolve regarding punitive damages and denies Packer's motion on this basis as well.

### CONCLUSION

For the foregoing reasons, Packer's motions for judgment as a matter of law as to Plaintiffs Wilson (Dkt. No. 238) and Davis (Dkt. No. 236) are denied. Packer's motion for a new trial as to Wilson and Davis (Dkt. No. 240) is also denied.

Dated:  April 12, 2018

_____
Andrea R. Wood
United States District Judge